No. 18,514.

G. R. GAGE, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

CONTRIBUTORY NEGLIGENCE — *Automobile* — *Crossing Railway Track.* An automobile driver approaching a railway crossing was driving his car at a speed of something less than ten miles an hour when he was within fifteen feet of the railway track. The highway on which he was driving was wet, and his vision was so obscured by rain and snow that he could see only about three hundred feet. He was fully conscious of the conditions and was familiar with the management of an automobile. When fifteen feet from the track he saw an approaching train about three hundred feet away. He then used all

appliances for stopping his car, but it "skidded" on the slippery ground until it went upon the railway track, where the engine of the car stopped and it was struck by the train. *Held*, he was guilty of negligence contributing to the injury.

Appeal from Reno district court; CHARLES E. BRANINE, judge. Opinion filed January 10, 1914. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*C. M. Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued for damages for injury to his automobile occasioned by a collision with one of the defendant's trains at a highway crossing near the city of Hutchinson. The petition charged that the defendant was guilty of negligence in failing to sound the locomotive whistle at the place and in the manner required by statute. One of the defenses was contributory negligence on the part of the plaintiff. The plaintiff recovered, and the defendant appeals.

The highway, which is a country road but is known as Lorraine street, extends north and south across the railway company's tracks. Approaching from the south the first track to be encountered is a switch track to a mill. Fifty and one-half feet north of this track is the main track. A short distance beyond is a side track, and still farther north is a switch track to a salt plant. The mill track is approached on a slight grade of one foot and four inches in fifty feet, and the main track is one foot and five inches higher than the mill track. Six hundred and twenty-two feet east of the center of Lorraine street the main track crosses the track of the C. R. I. & P. railway. At this point there is a signal tower and a semaphore. When a Santa Fe train approaches the railway crossing from the east the engineer notifies the signal man in the tower by one

blast of the whistle. The signal man then adjusts the mechanism which operates the semaphore. The engineer then gives two blasts of the whistle to indicate that he understands the semaphore signal, and if the way be clear he proceeds over the crossing. The train which struck the plaintiff's automobile came from the east on the main track and gave these signals in their order. The engineer of the train testified that besides the railway crossing signals he also gave the usual statutory signal for the highway crossing, consisting of two long and two short blasts of the whistle, but the jury disregarded the evidence. The collision occurred between four and five o'clock in the afternoon of a stormy day. The plaintiff was driving his automobile northward on the highway toward the defendant's tracks. He was familiar with the crossing, knew the main track was the track of the defendant's main line, and knew that numerous trains were operated upon it. Before turning into Lorraine street he heard, indistinctly, one blast of a locomotive whistle, but none after that. He testified that he was driving at the rate of from ten to fifteen miles per hour. As he went upon the mill track he slowed down to something less than ten miles per hour. How much less he could not say, and the jury did not say. In a written statement made to the railway company before suit was brought he said he was driving at the rate of about ten or fifteen miles an hour. He looked and listened for a train without stopping, and drove on without any intention of stopping unless he saw or heard something indicating the approach of a train. He testified that the mill track and the main track are probably fifteen or twenty feet apart, and that when within about fifteen feet of the main track he saw the train which was then about three hundred feet away. He instantly used all the appliances to stop his car, but it "skidded" on the wet and slippery road until the front wheels were over the south rail of the track. He could not back

because his engine had stopped, and he saved himself by leaping from the car.

The jury returned, among others, the following findings of fact:

"Q. Did the engineer in giving the signal to the tower man and in answering the signal from the tower man at the Rock Island crossing, blow the whistle three times? A. Yes, one long blast and two short blasts; blown at two separate times as signals to the tower man.

"Q. If you answer the above question yes, then state how far from the Lorraine street crossing, the engine was when said whistles were blown. A. One long blast blown thirty-one hundred and fifty feet from Lorraine street crossing. Two short blasts blown between eight hundred and fifty and ten hundred and fifty feet of the Lorraine street crossing.

"Q. If you find from the evidence that the defendant railway company was negligent, then state in what the negligence consisted, and what employee of the railway company was negligent. A. The whistle was not blown in accordance with the statutes of the state of Kansas.

"Q. How fast was plaintiff, G. R. Gage, driving his automobile when he reached a point within fifteen feet of the crossing? A. Less than ten miles an hour.

"Q. Did the plaintiff, G. R. Gage, on approaching the railway tracks with his automobile, try to stop the same at any time before he saw defendant's railway train approach from the east? A. No.

"Q. When plaintiff, G. R. Gage, first saw the approaching train, how far was he (Gage) from the railway track on which his machine was struck? A. Fifteen feet.

"Q. Was there any obstruction to plaintiff's view when he arrived at or near the railway tracks going north with his automobile? A. Yes, rain and snow.

"Q. If you answer the above question in the affirmative, then state the nature and extent of such obstruction. A. Rain and snow.

"Q. If you find that the plaintiff's view was obstructed then state whether or not plaintiff knew that his view was obstructed and was fully cognizant of that fact when he attempted to make the crossing. A. Yes.

"Q. Did the plaintiff, Gage, attempt to stop his machine by putting on the emergency brake after he saw the train approaching from the east? A. Yes.

"Q. If you answer the last question in the affirmative, then state why the automobile was not stopped before it got on the track where it was struck. A. Slippery road and automobile skidded.

"Q. At or shortly before the time of the accident was the ground wet and did this fact cause the automobile to slide or skid? A. Yes.

"Q. If you answer the foregoing question in the affirmative then state whether or not the plaintiff Gage knew the condition of the ground at that time. A. Yes.

"Q. Was the plaintiff Gage familiar with the handling of an automobile and had he been running an automobile for about two years before the accident? A. Yes.

"Q. State whether at any time the engine of the automobile went dead and if so where the automobile was at the time? A. Engine of the automobile went dead while automobile was on main track of Santa Fe.

"Q. Did the plaintiff look for the train before going onto the track, where he was struck, when he was 30 feet away? A. Yes.

"Q. If you answer the last question in the affirmative, then state what prevented him seeing the train. A. Rain and snow.

"Q. How far could the plaintiff, Gage, have seen the approaching engine and train on defendant's railway had he looked when his automobile was fifteen to twenty-five feet from the place of collision? A. Plaintiff did look; could see about three hundred feet.

"Q. If the plaintiff had stopped, looked and listened when he was 30 feet south of the railway tracks, could he have avoided the accident? A. Plaintiff exercised reasonable care."

The defendant argues that the signals to the tower man substantially complied with the statute which requires three blasts of the whistle to be given not less than eighty rods from a highway crossing (Gen. Stat. 1909, § 1770), and that the failure to give the statutory signal could not be the proximate cause of the injury

17—91 KAN.

since three proved blasts of the whistle, one of them heard by the defendant and the other two given approximately eighty rods from the crossing, seem to have been impotent as a warning.

The question of the defendant's negligence may be passed by since the plaintiff was guilty of contributory negligence as a matter of law.

The railway tracks were themselves warnings of danger. Besides this, the plaintiff had heard a locomotive whistle and knew a train was in the vicinity. When he reached the tracks he heard no sound indicating that a train was near and consequently was dependent upon sight for his safety. The range of his vision was so limited by rain and snow that he could not see a railway locomotive beyond a distance of three hundred feet, and he was fully conscious of the limitation. He knew the wet condition of the road and knew how to handle an automobile. He was in a place of safety when he saw the train had he been in control of his car, but he was driving at such speed that when he applied the brakes the momentum of the car carried it up the slight incline and upon the railway track before it stopped. Ordinary prudence required him to control his car so that he could use his faculty of sight near the track where it would be of most benefit to him, and so that he could stop before going on the track if a train should appear within the distance he was able to see.

In the case of *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555, the action was brought for damages resulting from the death of an occupant of an automobile who was not the automobile driver. The approaching train could have been seen when the automobile was twenty feet from the track. In the opinion it was said:

"The defendant further maintains that a judgment in its favor on the issue of contributory negligence is required by the findings. These show that at a distance of twenty feet from the track the train could

have been seen by the deceased. This would doubtless preclude a recovery if he had been managing the automobile. Reasonable prudence required the driver to approach the crossing with his car under control, to look for the train as soon as he was in a position to see it, and to stop as soon as he knew of its approach." (p. 73.)

In this case the thick curtain of rain and snow made the latest opportunity for observation before going on the track the best, and the duty to look and to keep the car under such control that it could be stopped continued until it was on the point of going upon the railway track.

The distinction between this case and the case of *Smith v. Street Railway Co.,* ante, p. 31, 136 Pac. 930, decided at the last sitting, is that Smith's view of the track was virtually obscured until he passed the hedge. When he had done this, moving at the slow pace of three miles per hour, the front portion of his automobile was in danger from the approaching railway car which was then only fifty feet away.

The special finding of the jury that the plaintiff exercised reasonable care, evidently made to evade answering the question to which it was appended, avails nothing because the other findings of fact quoted show that it is contrary to law.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the defendant on the findings of fact.