## NEOSHO GROCERY CO. v. ST. LOUIS-SAN FRAN- CISCO RAILROAD CO.

Springfield Court of Appeals, March 11, 1922.

RAILROADS: Automobile Truck Drivers Held Negligent under Kansas Law. Two experienced truck drivers were in charge of plaintiffs' automobile truck, and approached a crossing of defendant railroad. At a point forty-five feet from the track they looked and could see no train approaching. They continued on their way and did not look again until they were at a point where the truck was too near the track to be stopped. A train was then seen approaching and the truck was destroyed by the train, the drivers escaping. *Held*: that under the law of Kansas, where the accident occurred, the drivers were negligent in not continuing to look for the approach of a train, and no recovery could be had, even though defendant was negligent in not giving the statutory signals.

Appeal from the Circuit Court of Jasper County.—*Hon. Grant Emerson,* Judge.

AFFIRMED.

*Leo H. Johnson* and *H. S. Miller* for appellant.

*W. F. Evans* and *Mann & Mann* for respondent.

FARRINGTON, J.—The plaintiff appeals from the action of the trial court in refusing to set aside an involuntary non-suit taken by plaintiff at the close of its case.

The cause of action is based on a collision which occurred in the State of Kansas at the station of Opolis, where one of plaintiff's huge automobile trucks was attempting to cross defendant's tracks and was struck and destroyed by one of defendant's passenger trains. Stating the case most favorably to plaintiff, it must be admitted, so far as a disposition of the case is concerned, that defendant was negligent in failing to give the statutory signals as this train approached this railway crossing. Both parties agree that the case must be decided on the law of Kansas governing such cases.

The defendant relies on defeating the action and in upholding the trial court's action by its plea of contributory negligence, urging that the case made by plaintiff under the law of Kansas it was guilty of contributory negligence as a matter of law and hence no recovery can be had, even conceding defendant's negligence.

The evidence shows that plaintiff was a wholesale grocer concern, selling its goods in towns along the Missouri and Kansas line, and that it delivered its goods by means of automobile trucks. On the day of the collision it started a truck load of its wares and merchandise out with two experienced truck drivers for the purpose of making deliveries. A boy some thirteen or fourteen years old accompanied them on this day, he going merely for the experience of the trip and having no duties to perform.

The two men placed in charge of this truck on the day of the collision were Archie Chase, twenty-three years old, and Arnold Tabb, another driver for plaintiff, twenty-seven years old. Tabb had been driving the truck but before reaching Opolis he had surrendered the wheel to Chase. The undisputed testimony is that the railroad runs north and south and the highway plaintiff's truck was on crosses it about at right angles. The plaintiff's truck was traveling west. The truck coasted down a hill toward the crossing, the clutch disconnected but the engine running. When it reached the bottom of the

hill the truck was traveling twelve to fourteen miles an hour. Then it ran over a level stretch of road for some distance to the east right-of-way line of defendant's railroad, which was fifty feet east of the rails. When the truck entered the right-of-way it was still disconnected from the engine and had reduced its speed to six miles an hour. Chase, the driver, testified that just after entering the right-of-way he looked to the north for a train. He at that time was forty-five feet from the track and he testified that from the right-of-way line, which was fifty feet from the railroad track, he could see fifty or sixty feet north of the next crossing which was without question 400 feet north of the road he was traveling, making his vision of the railroad track unobstructed to the north, when he looked at the forty-five foot point, some 450 to 460 feet north of the crossing; that he then looked to the south and saw no train coming, and that he then released the clutch which turned the power on the car, running in high and increased the speed from six to eight miles an hour. The grade up to the rails from the right-of-way was several feet. He then looked no more to the right until Tabb, who was on the seat beside him, told him there was a train approaching from the north. This was when his truck had reached a point fifteen feet from the rails. The evidence shows that all was done that could be done to stop the truck but that it went on the track and stopped. He, Tabb and the boy accompanying them jumped and were uninjured, the truck and the groceries were completely destroyed.

Tabb's testimony corroborated Chase's in practically every particular except that he testified that from the edge of the right-of-way a person looking north could see a train 150 to 200 feet north of the next crossing, which would make a vision of the track north at the east right-of-way line, according to his version, about 550 to 600 feet away from the crossing over which they were going.

There is one point upon which all of plaintiff's witnesses agree, and that is that the train was running from sixty to seventy miles an hour, and that it never slackened its speed from the time those in the truck saw it until it collided. Also, the two drivers say that the truck was running six miles an hour until it was within thirty to thirty-five feet of the railroad track, when the clutch was let in and the speed picked up to eight miles per hour. When the train was discovered, and the truck was fifteen feet of the rails, then the brakes were thrown on the truck and it ran and skidded to the railroad crossing where it was stopped and struck by the oncoming train.

All of the Kansas cases to which our attention has been called hold that where the physical facts show that a train was in sight, then regardless of what may be testified to about looking and seeing no train the law holds the one whose duty it is to look as having seen what was perfectly apparent and unobstructed.

Giving plaintiff the benefit of the most favorable evidence, which we must in this case, the train was traveling about 100 feet per second and under no phase of the evidence under eighty-eight feet per second. . If it was traveling 100 feet per second, then it was going ten feet for every one foot the truck was traveling. Under the evidence the highest average speed the truck traveled from the forty-five foot point to the middle of the railroad track was not over seven miles per hour. If this is true, then the train which, under all the evidence, did not slacken its speed to the point of collision could not have been over four hundred fifty feet from the crossing when the driver of the truck looked north at the forty-five foot point, and he testified from a point fifty feet from the track he had a clear and unobstructed view of the track of 450 to 460 feet, and the undisputed evidence is that as the track was approached the vision north was lengthened. On the other hand, if the train was traveling eighty-eight feet per second, then it must have been well within the vision of the truck driver at

the forty-five foot point, where he says he looked and saw nothing of a train.

Aside from this, under the decision of the Supreme Court of Kansas plaintiff's two truck drivers, who were sent out jointly to operate it, were guilty of negligence which entered into the proximate cause of this injury. It is admitted that after looking north at the forty-five foot point no further attention was paid in that direction until the truck had reached a point where it could not be stopped before entering the path of the train on the rails. There was nothing to obstruct the vision from that forty-five foot point to the rails, and the physical facts show that the vision to the north extended as the track was approached. It is beyond cavil that at the thirty-five foot point, the thirty foot point, the twenty-five foot point, all distances from the track within which the truck could have been readily stopped in safety, this train was in plain view of those operating the truck had they but looked to see. By admitting that no effort was made to discover a train coming from the north after leaving the forty-five foot point until the truck had reached a point too near the track to be stopped, convicts plaintiff as being guilty of negligence in law.

We have found a case decided by the Supreme Court of Kansas where the facts are very similar to those in this case, and in that case the plaintiff was denied recovery, as a matter of law. It is the case of C. R. & P. Railway Co. v. Wheelbarger, 88 Pac. 531. The syllabus is sufficient to show the similarity to the present case. It is:

"A traveler, familiar with the conditions surrounding a railway crossing, was injured by a train at the crossing. The track was three feet above the level of the land, and was straight for eighty rods from the crossing. The traveler, when thirty-five feet from the crossing, looked for an approaching train, but saw none, and he did not look again.. He had at that time a clear view of the track for 465 feet. At thirty feet from the cross-

ing he had a view of the track for 538 feet, and at twenty feet the track was open to view for 1083 feet. Held, that he was guilty of contributory negligence as a matter of law, precluding a recovery, though the company was negligent.''

The only difference, if any, is that the plaintiff in that case was familiar with the crossing, while here Chase was not familiar with the crossing, but that element played no part in holding that a failure to look a second time after looking at the thirty-five foot point, when the train could have been seen, constituted negligence. Besides, in our case plaintiff had sent out two experienced truck drivers to operate this truck that day; they were seated side by side, and Tabb, who, in fact, finally did discover the train, was familiar with the crossing. That case, to our minds, decides this case under the Kansas rule, but the same principle will be found in A. T. & S. F. R. Co. v. Townsend, 17 Pac. 804, where one was held guilty of contributory negligence in driving onto a crossing where he looked at a point sixty or seventy feet from the crossing when his vision up the track was about 400 feet, and he never looked in that direction again until it was too late to avoid a collision, although had he looked again at sixty feet, and from there on up to the track, the train that hit him was unobstructed and in view of any one who took the care to look.

It was held in M. K. & T. Ry. Co. v. Bussey, 71 Pac. 261, by the Supreme Court of Kansas (quoted from Railway Co. v. Adams, 6 Pac. 529), that, ''It is the duty of a person about to cross a railroad track to make a vigilant use of his senses, as far as there is an opportunity, in order to ascertain whether there is a present danger in crossing. A failure to listen or look, when by taking these precautions the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury.''

See, also, Atchison, T. & S. F. R. C. v. Holland, 56 Pac. 6, where one was held guilty of negligence when the last attempt to discover a train by looking was at a point 111 feet from the crossing, where the undisputed testimony showed that at any point within 100 feet a train could have been seen by one caring to look in the direction from which it came.

In the case of Gage v. Atchison, T. & S. F. R. Co., 137 Pac. 938, the plaintiff knew his vision was limited to 300 feet when he looked. It was held that he could not rely on that and be acting within the scope of ordinary care for himself. Here plaintiff's truck driver knew at the forty-five foot point, when he made his last look to the north and saw no train, that his view was limited, according to his own statement to 450 to 460 feet. [See Pritchard v. A. T. & S. F. R. Co., 162 Pac. 315, by the Supreme Court of Kansas where the same principle is applied.] In Bunton v. Railway Co., 163 Pac. 801, the Supreme Court of Kansas held one guilty of contributory negligence when it was shown that at thirty- and twenty-foot points from the track the train was visible, and although the plaintiff testified that he did keep a sharp look out. [See, also, Jacobs v. Railway, 154 Pac. 1023; Grisham v. Union Traction Co., 181 Pac. 119; Atkinson v. Lusk et al., 173 Pac. 914.]

Appellant has cited no case where one approaching a railroad crossing, surrounded by no more hazards than are ordinarily present at crossings, and where the full view of the track was limited where he looked and saw no train, and then proceeded to cross relying on the view which he had taken, when the facts showed that between that point where he looked and the track he, by looking, could have discovered the train in time to have avoided injury, that he was held to have given evidence from which it could reasonably be inferred that he had exercised ordinary care.

There was something said in the testimony by plaintiff's truck driver about the crossing being rough, but

there is nothing in his testimony that showed that it was this roughness on the crossing that furnished an excuse for him to totally disregard his duty to keep a vigilant lookout for trains. A picture of the crossing was put in evidence and brought before us by the appellant, and there is nothing apparent from the picture that would call for his entire attention to be placed on the crossing ahead of him.

The rule in Kansas, as we view the decisions of the Supreme Court of that State, is not very different from the rule in this State under the facts of this case. The law there merely holds that a railroad crossing is in and of itself a warning of danger, and that there is a continuous duty on a traveler about to cross a railroad track to vigilantly exercise his God-given powers to discover trains that may come along at such time and under such speed as the traffic demands, and a failure on his part in this respect will bar a recovery by him where he is injured even though defendant's negligence combined with his in bringing about that result.

Finding that the trial court committed no error, the judgment is affirmed. *Cox, P. J.*, and *Bradley, J.*, concur,