No. 28,080.

L. L. HAINES, *Appellee,* v. A. B. CARROLL, *Appellant.*

(267 Pac. 986.)

Opinion filed June 9, 1928.

*Thomas F. Doran* and *Clayton E. Kline,* both of Topeka, for the appellant.
*John M. Williams* and *Arthur F. Davis,* both of Topeka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages sustained by the driver of an automobile when his car collided with another standing on an improved highway in the nighttime without lights. Plaintiff prevailed and defendant appeals.

The facts are substantially these: Plaintiff, who had been near Carbondale, was returning to Topeka about 1:15 a. m. July 22, 1926, on the Topeka avenue road. As he approached and crossed Twenty-seventh street, driving on the east or right-hand side of the paved slab, he discerned defendant's automobile some fifty or sixty feet ahead of him. Plaintiff attempted to turn out or go around defendant's car by applying his brakes and cramping his front wheels to his left or west. The front part of plaintiff's car passed to the left or west of the rear of the defendant's car, the right rear part of the plaintiff's car catching the left rear part of defendant's car. The plaintiff's car skidded into the defendant's. Plaintiff's car turned over, he being thrown through the windshield and severely injured. The plaintiff's was a Ford coupé, defendant's a Studebaker.

It appears that at about 11 o'clock on the night of July 21 the defendant drove to the home of Mrs. Mary Murphy, where he picked up Mrs. Murphy, a Miss Chase and a Mr. Silverthorne. They drove about the city and a short time before the accident had gone to a place called the Criterion inn to get some sandwiches. Returning, they stopped on the highway where the collision occurred. According to the United States weather bureau reports, it had rained during the afternoon and evening of July 21, .44 of an inch. There is an incline toward the north from a considerable distance south of Twenty-seventh street; the road at Twenty-seventh street was slightly level, but north of Twenty-seventh street there was a grade or incline toward the north of about 4.8 per cent. The plaintiff testified that the lights on his car were properly burning; that none were burning on defendant's car; that at Twenty-seventh street his lights projected above the pavement on account of the sharp grade to the north and displayed the top of the Studebaker car first; that the slick condition of the pavement at the point where he first saw it made his wheels slide sideways after he applied his brakes; that the grade to the north hindered him from seeing the

defendant's car, but that if it had had lights on it he would have seen it parked on the highway from the top of the hill near the Rankin dairy, which is about 800 to 1,000 feet south of Twenty-seventh street.

The defendant's chief contention is that the plaintiff was guilty of contributory negligence; that plaintiff's own testimony brings him within the rule stated in *Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317. The jury found the facts as follows:

"1. Where was the Studebaker car in which the defendant was riding located upon the highway at the time of the collision—

"(a) With reference to the center line of the concrete slab? A. All four wheels on slab east of center.

"(b) With reference to the north line of Twenty-seventh street? A. 50 to 60 feet north.

"2. At the time of the collision were the two right wheels of the Studebaker automobile, occupied by the defendant, on the dirt shoulder east of the east edge of the concrete slab? A. No.

"3. At what distance ahead of the plaintiff could the Studebaker car have been first seen by the plaintiff as he approached it from the south? A. 50 to 60 feet.

"4. From the point where the plaintiff first saw the Studebaker car ahead of him on the highway and at the rate of speed the plaintiff was traveling immediately prior to the collision, could he have turned his car to the left and avoided a collision with the defendant's car? A. No.

"5. From the point where you find plaintiff could by the exercise of due diligence have first seen the defendant's car standing in the highway and at the rate of speed he was traveling at the time, could the plaintiff have turned to the left and passed the defendant's car in safety? A. No.

"6. From the point where the plaintiff first saw the Studebaker car ahead of him on the highway and at the rate of speed he was traveling immediately prior to the collision, could he have stopped his car and avoided the collision? A. No.

"7. From the point where you find the plaintiff could by the exercise of due diligence have first seen the defendant's car standing in the highway and at the rate of speed he was traveling at the time, could the plaintiff have stopped his car and avoided a collision? A. No.

"8. At what distance in feet was plaintiff from the Studebaker car when he first saw it? A. 50 to 60 feet.

"9. How far south from the Studebaker car could plaintiff have seen the same as he approached it? A. From 50 to 60 feet.

"10. In what distance could plaintiff have stopped his Ford coupé at the speed he was driving immediately prior to the time of the collision? A. From 60 to 70 feet.

"11. At what rate of speed was the plaintiff driving his automobile immediately prior to the collision with the defendant's car? A. 20 to 25 miles per hour.

"12. At what distance could the plaintiff, by the use of the headlights on his car see to distinguish objects ahead of him upon the highway? A. 50 to 60 feet."

In *Fisher v. O'Brien,* supra, cited and relied on by defendant, it was said:

"Independently of any statute, it is negligence as a matter of law to drive an automobile along the highway on a dark night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it." (Syl. ¶ 1.)

Plaintiff testified:

"Q. . . . How far in front of you did your lights shine, so you could see objects ahead? A. Well, I should say sixty feet. . . .

"Q. I think you said your lights were good and clear that night? A. Yes.

"Q. Windshield not dirty? A. No, sir.

"Q. And it was wiped off in good shape? A. Yes, sir.

"Q. Well, do you remember when you got down to about that point at Twenty-seventh and Topeka boulevard? A. Yes, sir.

"Q. When you reached that point, how fast were you going? A. Between twenty and twenty-five miles an hour.

"Q. You had 50 to 60 feet in which to turn your automobile to the west and go around the automobile or object in this case after you saw it, didn't you? A. Yes."

In *Rhoades v. Atchison, T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994, it was said in the opinion:

"One driving an automobile in the nighttime must so operate the car that he may stop within range of vision of his headlights." (p. 328.)

In *Lauson v. Fond Du Lac,* 141 Wis. 57, 25 L. R. A., n. s., 40, 45, cited with approval by this court in *Fisher v. O'Brien,* supra, and in *Giles v. Ternes,* 93 Kan. 140, 144, 145, 143 Pac. 491, the supreme court of Wisconsin held that—

" . . . The driver on a country road knows that bridges and culverts must be rebuilt; that highways must be repaired; that washouts occasionally occur; that live stock roam about the roads unattended; that travelers on foot, on horseback, and in various kinds of vehicles are found using the highways at all seasons of the year, and at all times of the day and night. Such a driver has no right to expect, and does not expect, a free and unobstructed right of way over a well-defined track as does the engineer of a locomotive, or even the motorman of an electric car. . . . If his light be such that he can see objects only a distance of ten feet, then he should so regulate his speed as to be able to stop his machine within that distance, and, if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required.

. . . . We do not ground this rule on the fact that we have a statute requiring automobiles to carry reasonably bright lights while being operated during the hours of darkness. Independent of any statute, and considering the character of these machines, we hold it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them."

In *Ebling v. Nielsen*, 109 Wash. 355, it was said in substance—

"That ordinary care and prudence required an automobile driver, driving on a dark night and during a heavy rain, to have his machine under such speed and control as to preclude any reasonable likelihood of skidding when the brakes were applied, and which would permit him safely to handle his machine without collision after he could, and should, have discovered a truck ahead, independently of the question of the sufficiency of the red light on the rear of the truck, and for his failure he was guilty of contributory negligence, barring recovery, against one with whose truck he collided, on the ground that the truck did not have a sufficient red light as required by statute."

(See, also, *Ott v. Wilson*, 216 Mich. 499; *Spencer v. Taylor*, 219 Mich. 110; *West Const. Co. v. White*, 130 Tenn. 520.)

The plaintiff argues that the question of contributory negligence, if any, was an issue solely for the jury to determine; that the rule that a motorist must drive within the radius of his lights does not apply to unanticipated obstructions; that the skidding of a motor car is not evidence of negligence which precludes recovery; that when a motorist is confronted with an emergency, his negligence in not making the wisest choice is for the jury, and that all reasonable inferences should be indulged to support the verdict rather than to set it aside. The jury, in our opinion, did determine the facts in accordance with the plaintiff's testimony. Those facts show that plaintiff did not have such control of his car that he could stop or turn out within the vision of his lights in order to avoid the collision and that he was, therefore, as a matter of law, guilty of such contributory negligence as bars his recovery. The trial court should either have sustained a demurrer to plaintiff's evidence or should have entered judgment for the defendant on the special findings.

The judgment is reversed and the cause remanded with instructions to enter judgment for the defendant.

HOPKINS, J. (dissenting): In my opinion the question of plaintiff's negligence under all of the circumstances was one for the jury. I think the answers to the special questions do not show that the plaintiff as a matter of law was guilty of such contributory negligence as bars his recovery. Numerous authorities from this court

and others might be cited sustaining the plaintiff's contention, cases of similar circumstances where it has been held that the question of contributory negligence was one of fact. In *Abbott v. Wyandotte County*, 94 Kan. 553, 146 Pac. 998, where the driver of a car for whose death the action was brought drove over an embankment because of a defective bridge, the same theory of contributory negligence as a matter of law was advanced. There the driver could see ahead fifty feet and could have stopped his car within the same distance. On the question of stopping or turning aside to avoid the obstructions, the court said:

"It is argued that the plaintiff should not have been driving so fast that the entire distance he could see was required for stopping the automobile. The deceased had no occasion to anticipate stopping. He was on the right hand side of a broad highway and could see far enough to turn aside if confronted by visible objects. If a barrier had been extended a few feet from the corner of the bridge, he could have made the turn necessary to put him in line with the bridge and the road beyond without reducing speed at all. Regarding the rate of speed at which the deceased was driving as something like twenty-five miles per hour, it is not conclusive upon the question of his prudence. . . . It is not necessary to recite all the facts and circumstances here referred to. They included the essential elements of safe automobile driving generally, the character, ability and skill of the deceased as an automobile driver, the character of the machine and its ability to perform, its state of repair and its equipment with respect to lights, brakes, steering gear, and other things, the mission which the deceased was executing, time and weather conditions, the character and condition of the road, the location of the bridge, its character and its surroundings, the familiarity of the deceased with the road and bridge, and other matters, the relation and effect of which made the question of contributory negligence one for the jury to determine." (p. 559.)

In determining whether a given state of facts establishes contributory negligence as a matter of law, or is a question of fact to be determined by the jury, the true rule as I understand it is (and this has been determined many times by this court) that if the question of contributory negligence is one that is reasonably open to debate—one upon which reasonable minds might differ—then it is a question of fact for the jury, while if the facts are such that reasonable minds could reach but one conclusion, which conclusion is that of contributory negligence, it is a question of law. The facts in the instant case do not, in my opinion, warrant the conclusion by this court that plaintiff was, as a matter of law, guilty of contributory negligence.

JOHNSTON, C. J., joins in the dissent.