No. 33,874

HELEN LOUISE ROBINSON, *Appellant*, v. CHARLEY SHORT et al., *Appellees.*

(79 P. 2d 903)

Opinion filed June 11, 1938.

*Charles G. Dockhorn,* of Goodland, and *Hugh C. Larimer,* of Topeka, for the appellant.

*Elmer E. Euwer,* of Goodland, and *L. C. Gerding, Jr.,* of Denver, Colo., for the appellees.

The opinion of the court was delivered by

THIELE, J.: On the trial of an action to recover damages for injuries sustained in a collision of automobiles, the trial court sustained a demurrer to plaintiff's evidence. From that ruling plaintiff appeals to this court.

In testing the sufficiency of evidence as against a demurrer, it has been repeatedly held that the court shall consider all of the plaintiff's evidence as true, shall consider that favorable to the plaintiff and disregard that unfavorable, shall make all inferences favorable to the plaintiff, and shall not weigh any part that is con-

tradictory, nor weigh any differences between his direct and cross-examination, and if, so considered, there is any evidence which sustains the plaintiff's case the demurrer should be overruled. (See *Shoup v. First Nat'l Bank*, 145 Kan. 971, 975, 67 P. 2d 569, and cases cited.) We shall test the evidence under that rule.

The demurrer was sustained on the ground that plaintiff's evidence showed her guilty of negligence which contributed to her injuries.

The place of the accident and its relation to other points is as follows: U. S. Highway 24 runs east and west, and outside of the city of Goodland has an oil mat surface. The first north-and-south road completely intersecting this highway is Cattle Trail Road and is about eight blocks west of the west city limits of Goodland. Near the intersection is a café where plaintiff was employed. Between the west city limits and the café, roads or streets come up from the south, but do not continue north of the highway. On the north side of the highway and some distance west of the west city limits is a road from the O. K. Packing Company leading to the highway, but not continuing south.

Plaintiff's evidence showed the following with respect to the accident in which she was injured: Plaintiff had been employed for about three weeks at the café mentioned. She lived in Goodland and drove her employer's car to the café and was familiar with the highway and the road from the packing plant. On February 15, 1937, at about 8:30 in the morning, she started driving from the hotel in Goodland, where she lived, to the café. A duststorm was in progress. She was able to see at least three blocks from the time she left the hotel and until she got out on the highway. As abstracted, she testified on direct examination:

"After I turned and started west on the highway there was a decided change in the visibility and a great increase in dust about four blocks out from town. As I left the edge of the city I could see about fifteen feet ahead of me. And when I got on the oil pavement I could not see the road from the O. K. Packing Company. When I hit the worst part of the dust I couldn't see more than three feet in front of my car.

"When I came out of town on highway 24 I was traveling about twenty-five miles per hour, and as I came into the dust I decreased my speed to around fifteen miles per hour. I pulled out the throttle and took my foot off the foot-feed and I had my hands on the steering wheel. I was familiar with the car, and the mechanical condition of the car, including the brakes, was good. When I pulled out the throttle and quit feeding the gas with my foot my speed was decreased. I was watching the road carefully and didn't see the

truck until I was right on it, when I put my brakes on and threw in the clutch and at the same time hit the truck; it all happened at once. There were no lights on the truck and I did not hear the sound of any horn before the crash."

On cross-examination she testified to the same general effect and, in part, as follows:

"Q. How far could you see? A. Oh, when I first left town I could see for, maybe, three blocks.

"Q. When you first went on to highway 24? A. Yes.

"Q. And how far did you go before your visibility was reduced? A. It was about, oh, three and a half or four blocks.

"Q. And then how far could you see? A. I couldn't see more than· three feet in front of my radiator.

"Q. After you had proceeded about four blocks? A. Yes.

"Q. How long did that condition exist? A. Until I hit Mr. Short.

"Q. Do you have any idea how far you drove when your visibility was only three feet, before the collision occurred? A. No, I have not."

Plaintiff also testified that at the time of the accident defendant's truck was in motion and the front of her car hit the side of the truck near its left front fender; that the left window of her car was down and the other windows were up, and that her lights were not on, and that she was driving on the right-hand side of the road. One Bracken testified he was near the accident; that he was driving west on highway 24 and as he left town the dust got a little worse, got heavier; he heard the crash but could not see the cars. He heard no horn sounded. There was testimony that plaintiff was taken to her employer's café, and that Bracken and defendant were also there. Her employer testified he asked plaintiff how badly the car was torn up, and that defendant said, "Now, it wasn't her fault. . . . There ain't no use saying anything to her about that." Plaintiff's employer also testified that it was dusty and windy; that some work had been done in a field near the O. K. Packing Company road and dust was coming from this field; that the wind was coming from the north and west—not a gale, but a steady wind.

Much evidence was offered 'about plaintiff's injuries and treatment which we need not notice.

As has been indicated, the trial court sustained a demurrer to this evidence, and this appeal followed. Appellant here says that there was no general dust storm, and that at places the visibility was fairly good; that it was necessary that plaintiff be on the highway to get to her place of employment, and contends the trial court erred in holding as a matter of law that it was negligence for plaintiff to drive an automobile on a public highway where the visibility was

such that the driver could not see more than three feet ahead of the front of her car.

The test for determining whether plaintiff was guilty of contributory negligence as a matter of law was stated thus in *Sponable v. Thomas*, 139 Kan. 710, syl. ¶ 4, 38 P. 2d 721, and in *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, syl. ¶ 2, 53 P. 2d 923:

"In determining whether as a matter of law a plaintiff is guilty of contributory negligence which precludes his recovery for injuries sustained, all of the testimony favorable to the plaintiff must be accepted as true, and if the facts are such that reasonable minds reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law."

See, also, *Crowe v. Moore*, 144 Kan. 794, 798, 62 P. 2d 846.

In *Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317, the driver of an automobile, whose headlights failed, procured a lantern which he hung on the front of the radiator. He then drove his car at such a speed he could not stop within the range of his vision and collided with a spring wagon proceeding in the same direction. In determining negligence it was held:

"Independently of any statute it is negligence as a matter of law to drive an automobile along the highway on a dark night at such speed that it cannot be stopped within the distance that objects can be· seen ahead of it." (Syl. ¶ 1.)

The rule was followed in *Haines v. Carroll*, 126 Kan. 408, 267 Pac. 986, and in *Knox v. Stevens County Comm'rs*, 128 Kan. 22, 276 Pac. 84. It was likewise discussed rather fully in *Watson v. Travelers Mutual Cas. Co.*, 146 Kan. 623, 627, 73 P. 2d 64, although not there applied.

In *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 316, 282 Pac. 593, it was said:

"The petition alleged that plaintiff did not know he was near a railway track, had no notice or knowledge of the obstruction, and on account of extreme darkness, fog, and dense smoke of the engine, he drove his truck against the side of a freight car and demolished the truck. He should have operated the truck in accordance with his ability to see.

"In the absence of statute it is negligence for a driver to operate his auto vehicle at night without lights which will enable him to see objects ahead of him in time to avoid accident. The statute requiring lights was not enacted merely to secure the giving of notice of approach of the vehicle carrying the lights. One of the purposes of the statute was to require equipment which will enable a driver to see ahead of him, and it is negligence for him to proceed at such speed that he cannot stop within the distance he can see ahead of him. The rule has been applied to one driving at night (*Giles v. Ternes,*

93 Kan. 140, 143, 143 Pac. 491); to one driving with dim lights (*Fisher v. O'Brien*, 99 Kan. 621 162 Pac. 317); to one driving at night who could not see because of brightness of the lights of an automobile coming toward him (*Howard v. Zimmerman*, 120 Kan. 77, 80, 242 Pac. 131); to one driving at night when it is misting or raining (*Rhodes v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 324, 246 Pac. 994); to one driving in foggy weather (*O'Connell v. Lusk*, 122 Kan. 186, 250 Pac. 1059); and to one driving at night on a grade which caused his lights to be projected above an obstruction (*Haines v. Carroll*, 126 Kan. 408, 267 Pac. 986). The result is that if the night be very dark and the fog very thick and the engine smoke very dense, the driver of an auto vehicle who is just driving along the road proceeds at his own risk, unless he correlates speed and ability to stop with ability to see." (p. 316.)

The above-mentioned cases, with one exception, dealt with night-time driving.

In *Gage v. Railway Co.*, 91 Kan. 253, 137 Pac. 938, it was held:

"An automobile driver approaching a railway crossing was driving his car at a speed of something less than ten miles an hour when he was within fifteen feet of the railway track. The highway on which he was driving was wet, and his vision was so obscured by rain and snow that he could see only about three hundred feet. He was fully conscious of the conditions and was familiar with the management of an automobile. When fifteen feet from the track he saw an approaching train about three hundred feet away. He then used all appliances for stopping his car, but it 'skidded' on the slippery ground until it went upon the railway track, where the engine of the car stopped, and it was struck by the train. Held, he was guilty of negligence contributing to the injury." (Syl.)

And in *Mowrer v. Osage Township*, 135 Kan. 278, 10 P. 2d 906, it was held:

"The plaintiff drove his automobile in the darkness and when there was a dense fog which prevented him from seeing the road and the intersection of another road on which he desired to turn, and on which there was a washout and ditch. He undertook to make the turn without seeing or knowing where he was going and drove into the washout or ditch, the existence of which he was familiar with: Held, that his own negligence contributed to his injury and bars a recovery of damages." (Syl. ¶ 2.)

We are not unaware of that class of cases where, because of circumstances therein, the plaintiff was relieved from a harsh application of the above rule, such as *Hayden v. Jack Cooper Transport Co.*, 134 Kan. 172, 5 P. 2d 837; *Sponable v. Thomas*, supra, and cases cited therein. And annotations on duty of driver of automobile whose view is obscured by dust, smoke or atmospheric conditions may be found in 37 A. L. R. 587, 73 A. L. R. 1020, and on driving automobile at speed which prevents stopping within length of vision as negligence may be found in 87 A. L. R. 900, 97 A. L. R.

546, from which it may be concluded that, as a general rule, whether plaintiff is guilty of negligence as a matter of law depends in a large measure on the circumstances of the particular case.

In the case before us plaintiff's evidence shows clearly that she was well aware as she drove along the highway that visibility was poor and that, notwithstanding, she continued to proceed, and for some distance drove when she could not see over three feet ahead of her car. Whether it would have increased her visibility had the headlights been lighted may be debatable, but if they would have helped she did not have them on. Because of the dust she drove in about the same circumstances as one would who drove an unlighted car on a dark night. That she did not correlate her speed with her ability to stop is clear, for she testified that as soon as she saw defendant's truck she put on her brakes, which were in good condition, but notwithstanding, she simultaneously hit the truck. We do not believe that reasonable minds could come to different conclusions respecting her negligence. Under the situation presented by the evidence, the trial court properly ruled that plaintiff was guilty of negligence which contributed to her injuries, and that defendant's demurrer to her evidence should be sustained.

The ruling of the trial court is affirmed.