No. 36,677

FRANK DRENNAN, *Appellee*, v. PENNSYLVANIA CASUALTY COMPANY, *Appellant*.

(176 P. 2d 522)

Opinion filed January 25, 1947.

*Laurence S. Holmes*, of Wichita, argued the cause, and *Carl Van Riper*, of Dodge City, and *George J. Hondros* of Wichita, were with him on the briefs for the appellant.

*E. C. Minner* and *George R. Gould*, both of Dodge City, were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This appeal is from an order overruling defendant's demurrer to plaintiff's evidence in an automobile-collision case and from the judgment for plaintiff. Defendant stood upon the demurrer and offered no evidence. The only question presented is whether under the evidence, plaintiff was guilty of contributory negligence as a matter of law.

On the night of August 21, 1944, Frank Drennan, the appellee, together with his wife, was driving west on a main highway a few miles east of Dodge City. Just after passing a car approaching from the west, the driver of which did not dim the headlights of his car, the appellee ran into a "truck and semitrailer"—hereinafter referred to simply as a truck—which was standing on the highway headed westward, and in the west-bound traffic lane. Appellee was severely injured and his car was badly damaged. At the time of the accident the truck was being operated as a common carrier under a certificate issued by the State Corporation Commission.

The appellant, the Pennsylvania Casualty Company, was a liability insurance carrier for the owner of the truck, and was apparently the only defendant named in the action. No question is raised as to appellee's right to proceed solely against the insurance carrier.

Appellant invokes and relies wholly upon the general rule frequently and variously stated by this court to the effect that it is the duty of a driver of an automobile to correlate his speed with his ability to see and to stop; to keep his car under such control that he will be able to stop within the clear distance ahead of him.

Appellee contends that under the facts and circumstances shown, and giving the driver the benefit of inferences favorable to him, the question of whether he was guilty of contributory negligence was one for the jury.

It will suffice to summarize plaintiff's evidence. Plaintiff was driving a two-seated car, 1941 model, and his wife was with him. He was driving west on a black-top highway, No. 50S, near Dodge City, when the collision occurred. The roadway was dry and "it wasn't raining." The highway at that point ran straight east and west, and an approaching car could be seen from a point about a half-mile from the scene of the accident, the lights being visible to both cars the entire distance. Being blinded by the headlights of an approaching car, the plaintiff, by dimming his own lights, "kept calling for dimmers," but the driver of the approaching car did not put on the dimmers; plaintiff was driving on the north side of the highway and was traveling "between forty-five and fifty miles"; he didn't know how far away the approaching car with the bright lights was, nor did he know how fast the approaching car was traveling, but he would "judge around the same forty-five or fifty miles an hour"—he didn't know; plaintiff "started to slow down and did slow down some, I don't know how much"; plaintiff's car had good brakes, in good condition; as soon as he passed the other car, he immediately threw on his full lights and then, for the first time, saw the truck ahead of him. He applied the brakes at once, and turned toward the right, but was unable to avoid a collision with the truck which was loaded with oil-well machinery. The truck was standing squarely in his lane of traffic and there had been no flares anywhere along the highway, and he saw no taillights nor red lights anywhere "on or near the back end of the truck and trailer." The truck was about forty-five or fifty feet ahead of him when he first saw it, and "from the rear it looked like it was

as high as that wall there (indicating) to me, I don't know how big but it had two big motors on it, just looked black, that's the first thing I seen"; at no time had he seen the truck traveling ahead of him, nor did he see it either before or after the approaching car passed it, until he passed the approaching car and put on his full headlights; after the accident, a highway patrolman who visited the scene observed skid marks extending forty feet back from the plaintiff's car, and testified that all four wheels of the truck were on the "oil travel portion of the highway."

The general rule is that it is the duty of the driver of an automobile to drive his car as a prudent driver would do and whether he has done so is ordinarily a question of fact to be determined by the jury in the light of all the evidence.

Along with the duty of a driver of a car to keep his car under control and correlate his speed with the clear and unobstructed distance ahead of him are other duties imposed by law which must also be considered. One of these duties imposed by law is the duty of the driver of a truck stalled at night on a highway to place warning flares along the highway (G. S. 1945 Supp., 8-5,108). Not only were there no flares, under the evidence here, but appellee testified that he saw no lights of any sort on the truck, and that the rear end of the truck was large and black in color.

Another fact to be considered is the fact that the appellee slowed his speed to some extent, and that he repeatedly signaled the driver of the approaching car to dim his lights, which he refused or failed to do, in violation of a specific statutory requirement (G. S. 1945 Supp., 8-593). Must we say as a matter of law that a reasonably prudent driver would assume, under the situation disclosed by the evidence, that the approaching lights would not be dimmed before the cars passed each other? Or that he should be required to assume that there might be a truck standing in the highway without lights and with no flares having been placed to warn approaching cars? We do not think so. We are not here saying that appellee was not guilty of contributory negligence. We are only saying that under the circumstances disclosed, it was a question for the jury to decide whether he was driving his car as an ordinarily prudent driver would do.

There is no occasion to review the many cases cited by appellant in which fog, dust, smoke, snow or rain have completely obliterated all or practically all view of the highway ahead of a driver. The

question must be viewed realistically. Every driver of an automobile who has done night-driving knows that he frequently meets cars which fail entirely to dim their lights. Very many of them fail to do so until they are very close. Ordinarily the view ahead is only interrupted for a short period of time by the bright lights of the approaching cars. In the case of *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438, we specifically rejected the contention that it is the absolute duty of an automobile driver who is blinded by bright lights of an approaching automobile to stop (Syl. ¶ 1). Discussing the question of duty to stop entirely when blinded by bright lights, it was said in the opinion:

"Clearly such a rule should not be applied to a driver who, notwithstanding the blinding lights, could know to a certainty there was no obstruction immediately beyond the point of relief from the dazzling lights. If a vigilant driver, proceeding at a moderate rate of speed, should be reasonably sure he might safely go forward without stopping, he would not necessarily be negligent in doing so. Therefore the question ultimately resolves itself into one of reasonable care under all the circumstances." (p. 755.)

Furthermore, we have recognized qualifications or exceptions to the general rule that a driver must be able to stop his car within the clear distance ahead. For instance, if he is confronted with a sudden emergency not of his making—such as the sudden entrance of another car from a side road—it would be wholly unreasonable to say, and we have not said, that negligence is shown, as a matter of law, if he is unable to stop his car in time to avoid a collision. It is perhaps inaccurate to say that such situations constitute exceptions to the rule. It might be more accurate to say that the rule was never intended to apply except to situations which an ordinarily prudent man would or should anticipate. In this class of "exceptions," so-called, is the case where a driver is *suddenly* confronted with blinding lights of an approaching car. The inapplicability of the general rule to such a situation was recognized in the recent case of *Towell v. Staley,* 161 Kan. 127, 166 P. 2d 699, which is closely analogous to the one before us, and in which citations of numerous cases equally pertinent here may be found. In that case there was also a collision with a truck parked on the highway, without lights. Blinded by the lights of another car, the plaintiff did not see the truck until he had passed the lights of the other car. Giving the plaintiff the benefit of a favorable interpretation of the evidence, we said: (p. 136.) "The inference in the present case

favorable to the plaintiff is that he was only blinded as he passed the bright lights," and refused to hold him guilty of contributory negligence as a matter of law. This is in line with the sound rule that questions of negligence are ordinarily for the trier of the facts, and that such questions should not be withdrawn from the jury except where the acts of commission or omission have been such that a court can say that it is clear that no man of ordinary prudence would have committed them under the attendant and undisputed facts and circumstances. Few, if any, rules are more firmly established. American Jurisprudence (Vol. 38, p. 1054) states the rule this way:

"In accord with the general rule governing negligence, the courts can withdraw the question of contributory negligence of the plaintiff from the jury and determine it as a matter of law when the facts are indisputable and the inference therefrom is so certain that all reasonable men in the exercise of a fair and impartial judgment must agree upon it and draw the same conclusion from them."

In *Conwill v. Fairmount Creamery Co.*, 136 Kan. 861, 18 P. 2d 193, in which the facts were also analogous to those of the instant case, this court said:

"It need hardly be repeated that contributory negligence must be clearly established before that question of fact can properly be withdrawn from the jury. To justify that course in the present case defendant directs attention to the fact that plaintiff was driving at a rate of 30 to 35 miles an hour when he was blinded by the lights of approaching automobiles. He could not see what was ahead of him on his side of the road, so he took a chance that the road was clear. Counsel for defendant concede that if a motorist is suddenly blinded so that he has no opportunity to stop his car or slacken its speed he would not be guilty of negligence if he collided with something in the road. But here the fact is stressed that plaintiff was blinded first by the lights of one automobile and then another while he traveled some considerable distance, and even when he did collide with the truck he was, according to his own testimony, still traveling at the rate of 25 miles an hour. Defendant also directs attention to the fact that the night was misty and the road damp and somewhat slippery. Defendant also cites some of our recent cases not greatly different from this one in which this court held that plaintiff's own evidence did establish contributory negligence as a matter of law. (*Haines v. Carroll*, 126 Kan. 408, 267 Pac. 986; *Jones v. Atchison, Topeka & Santa Fe Rly. Co.*, 129 Kan. 314, 282 Pac. 593; *Tuer v. Wayland*, 129 Kan. 458, 461, 283 Pac. 661.) A majority of this court, however, are of the opinion that under the evidence adduced by plaintiff there is a closer analogy between the present case and those of *McCoy v. Pittsburg Boiler & Machine Co.*, 124 Kan. 414, 261 Pac. 30; *Womochil v. List & Clark Construction Co.*, 135 Kan. 695, 11 P. 2d 731; and *Witte v. Hutchins*, 135 Kan. 776, 12 P. 2d 724, where it was held that plaintiff's con-

tributory negligence under quite similar circumstances was not so clearly established as to require or justify a ruling which would take the case from the jury." (p. 862.)

It will be noted that in one respect at least, the facts in the Conwill case were stronger as against the plaintiff than in the case before us. In that case the night was "misty and the road damp and somewhat slippery." Here the road was dry and there·were no weather conditions to give added peril.

We think that under all the evidence the question of whether appellee was guilty of contributory negligence barring recovery was for the trier of the facts and that the demurrer was properly overruled.

The judgment is affirmed.

Hoch, J. (dissenting): With due respect for the views of the majority, whose opinion it fell to my lot to write, I must dissent from the disposition made of this case. It will, I fear, add confusion to the state of the law involved.

Under the evidence in this case, I do not see how we can consistently fail to apply the rule, repeatedly laid down in our decisions, that the driver of a car who does not correlate his speed with the clear and unobstructed distance ahead of him, and who proceeds blindly not knowing what may be ahead of him, is guilty of *contributory negligence as a matter of law.* (*Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F 610; *Chance v. Murry,* 143 Kan. 476, 54 P. 2d 981 and cases cited on page 478; *Eldredge v. Sargent,* 150 Kan. 824, 96 P. 2d 870; *Berry v. Weeks,* 146 Kan. 969, 73 P. 2d 1086; *Slaton v. Union Electric Ry Co.,* 158 Kan. 132, 145 P. 2d 456; *Orr v. Hensy,* 158 Kan. 303, 147 P. 2d 749; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Wright v. Nat'l Mutual Cas. Co.* 155 Kan. 728, 129 P. 2d 271; *Haines v. Carroll,* 126 Kan. 408, 267 Pac. 986; *Jones v. Atchison, T. & S. F. Ry. Co.,* 129 Kan. 314, 282 Pac. 593; *Goodman v. Wisby,* 152 Kan. 341, 103 P. 2d 804; *Jilka v. National Mutual Cas. Co.,* 152 Kan. 537, 106 P. 2d 665; *Leathers v. Dillon,* 156 Kan. 132, 131 P. 2d 668; *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681). Many of these cases were reviewed in the recent case of *Towell v. Staley,* 161 Kan. 127, 166 P. 2d 699, and particularly in the dissenting opinion by Mr. Justice Wedell. There is no need now to cover the same ground again. Whether the inability to see ahead resulted from dust, smoke, fog, blinding lights or other cause, the appli-

cation of the rule has been based on the same fundamental proposition that one who does not correlate his speed with the clear and unobstructed distance ahead, and proceeds without regard to possible harm to himself or to others on the highway, does so at his peril.

The court apparently draws some distinction between driving blindly into fog, smoke, dust, rain or snow, and continuing ahead when blinded by approaching lights. If we mean to establish an exception to the rule in the case of a driver blinded by approaching lights, I think we should forthrightly overrule our decisions where the rule has been applied to drivers proceeding when they could not see objects in their lane of traffic by reason of blinding lights of oncoming cars (notably *Howard v. Zimmerman*, 120 Kan. 77, 242 Pac. 131; and *Harrison v. Travelers Mutual Cas. Co.*, supra).

I fully agree that the rule is not and should not be applicable to *sudden or momentary* blinding by approaching lights or to other sudden emergency for which the driver is not responsible. But under the evidence in this case, I find nothing to support the decision on that ground. In *Towell v. Staley*, supra, upon which appellee principally relies and which is cited in the majority opinion, a majority of the court felt that an interpretation of the evidence favorable to the plaintiff would support the view that he was *suddenly* or *momentarily* blinded. Three members of the court were unable to so construe the evidence. But assuming, as we do, the correctness of the majority's interpretation of the evidence in that case, there was then a sound basis for saying that the question of plaintiff's contributory negligence was one for the jury. But how, under the evidence in this case, can it be said that there was only a *momentary* or *sudden* blinding by the approaching lights? The road ahead was straight and substantially level. Appellee testified that he didn't know how far away the car with the bright lights was but that the lights "just blinded me and I couldn't see," and that he *"kept calling* for dimmers." Appellee was traveling at about forty-five or fifty miles an hour. When, in spite of repeated signals, the driver of the approaching car failed to dim his lights, the appellee did "slow down some"—he "didn't know how much." At any rate, immediately upon passing the approaching car, he saw the truck for the first time. It was then forty-five or fifty feet ahead of him. The lane to the left of the truck was clear. But appellee's speed was then such that in spite of the fact that he had good brakes

and applied them immediately and skidded his car for at least forty-five feet, he ran squarely into the truck with such force that "the front end was practically demolished."

Certainly, as stated in the majority opinion, it may seldom be the duty of a driver actually to *stop* his car, because of bright lights which interfere with clear vision ahead. But is he any more justified in proceeding at an *unsafe speed*, against *blinding lights*, than he would be in proceeding in fog, or smoke, or dust, at a dangerous speed, when he cannot see the highway ahead of him? Is the rule to be held inapplicable to blind driving against blinding lights simply because blinding lights are more often encountered than fog or dust or other such causes which obscure the road ahead? Certainly such a quantitative distinction would disregard the basis upon which the rule rests.

Again, I agree fully that the whole situation must be viewed from a practical, a realistic standpoint. So viewed, I say—if the general rule is to have any logical validity—that a driver who is so blinded by approaching lights that he can see nothing ahead of him, must proceed, if at all, with great caution. To do so may considerably delay a traveler from Topeka to Kansas City—to borrow an illustration suggested in *Anderson v. Thompson,* cited in the majority opinion—in reaching his destination. But if he does not do so, he may never get to Kansas City! And it is of still greater importance that he exercise such caution—the caution of ordinary prudence—out of regard for the safety of others who may be lawfully traveling or unavoidably stalled in the traffic lane ahead of him. Had innocent parties been killed or injured by appellee's headlong driving in this case, I cannot imagine our saying that it would constitute a defense on the part of appellee for him to say that being blinded by approaching lights, so that he could see nothing ahead of him, he *repeatedly* called for dimmers, and the lights not being dimmed, he then proceeded blindly at such a speed that when the stalled car suddenly loomed up forty or fifty feet ahead of him, he could not avoid the collision.

The court refers in the opinion to the requirement as to red lights on the rear end of motor vehicles, to the requirement that when a truck becomes stalled on a highway at night, flares must be placed at specified distances from the truck, and to the statutory requirement that drivers of approaching cars must dim their lights. These requirements, not questioned, relate to negligence of

the truck driver or of the driver of the approaching car. I do not see their pertinence in determining whether the plaintiff was guilty, under the undisputed testimony, of negligence as a matter of law. By fusing these questions, when the only issue before us relates to plaintiff's contributory negligence, we seem to move, without saying so, toward the doctrine of comparative negligence. There is something—perhaps much—to be said for that doctrine, followed in some jurisdictions. But the doctrine has been repeatedly rejected by this court. There may be reason to review our position in the matter. If so, let us do so directly.

There are those who believe that in the cases above cited, and perhaps others, this court has gone too far in holding that blind driving may constitute contributory negligence as a matter of law. They would in all cases leave such questions to the jury. Others believe just as strongly that the ends of justice are served by retaining this rule of law in the hands of trial judges and for appellate review. They support that view by very realistic considerations. However, I express no opposition to a broad reëxamination of the whole question. In my opinion, the decision in this case throws no helpful light upon it.

WEDELL, J., joins in the foregoing dissenting opinion.