No. 30,206.

DONALD MOWRER, a Minor, by E. T. WILSON, His Next Friend,
*Appellant*, v. OSAGE TOWNSHIP, *Appellee*.

(10 P. 2d 906.)

Opinion filed May 7, 1932.

*F. J. Oyler* and *G. R. Gard*, both of Iola, for the appellant.

*Frederick G. Apt*, of Iola, for the appellee; *Hubert Lardner*, of Fort Scott, and *A. R. Enfield*, of Iola, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: Donald Mowrer, a minor, brought this action by his next friend, E. T. Wilson, against Osage township, of Allen county, to recover damages for personal injuries sustained by reason of a defective township highway. The township prevailed, and plaintiff appeals.

The plaintiff produced his testimony and when he had rested the defendant interposed a demurrer upon two grounds, one that the plaintiff had failed to prove that the required notice had been given to the township trustee, and that the officer did not have actual knowledge of the defect five days prior to the time of the injury. There was a further ground that the plaintiff was guilty of contributory negligence. The court sustained both grounds of the demurrer and gave judgment for defendant.

It was contended first that the plaintiff's testimony was short in

respect to the showing of the requisite notice of the defect in the highway, and second, that the plaintiff was guilty of contributory negligence in driving into a defect, with which the plaintiff was familiar, when he could not see where he was going. A washout on the side of the highway, which extended about six feet towards the center of the traveled part, and was about six feet deep and four and one-half feet wide, had existed continuously for a number of years near the intersection of a north-and-south road with one running east and west. On the morning of December 13, 1929, at about six o'clock, when there was a dense fog, the plaintiff drove his automobile south and attempted to turn west on the intersecting road, which was familiar to him, near the washout mentioned, and had only proceeded thereon a few feet when his automobile fell into the hole and caused the injury for which he asked damages from Osage township. It appears that soon after the accident the township erected a guard railing around the hole.

The action is purely statutory and is brought under R. S. 68-301, which provides:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge, culvert or highway constructed wholly or partially by such county, and when the chairman of the board of county commissioners of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect."

No direct evidence was produced as to the notice required by the statute, but there was testimony that the trustee had traveled over the road when he was assessing the property of a witness in March, 1929, seven or eight months prior to the accident, and saw the conditions at the intersection, including the washout. The trustee, it appears, made an assessment of the same witness in March, 1930, and in a conversation as to the accident, the trustee was asked if anything was to be done towards paying damages for the injuries sustained by plaintiff, and the trustee answered that he would like to do something for the boy but didn't know of anything he could do for him. He was then asked if there was any difference in the defect now from what it was in March, 1929, when he went over the road, and his reply in effect was: The only difference was the erection of

a banister or railing around the defect, which had been erected the day after the accident. The trustee admitted to witnesses that he had traveled over the highway in 1929 several times before the accident. The evidence tends to show that the obvious defect had existed many years prior to the injury of plaintiff, and that the trustee could not have failed to observe the conditions existing at the intersection in going forward and back over it. It is argued that his attention was not called to the specific defect and that knowledge of it cannot be implied from its long continuance. This is true, but the evidence relating to the place, the nature of the defect and his admissions to others, showed that he had actual knowledge of the defect, and also that it was dangerous to travel. Of course, in the interim there might have been an improvement or repair of the road, but the trustee admitted to parties that there had been no change or repair between the time he went over the road in 1929 and the time of the accident.

Under the testimony he had knowledge sufficient to compare the defect as it existed in March, 1929, with its condition in December, 1929, and stated that in that time there was no change except as to the guard railing put around it after the accident occurred. All the testimony shows that the defect, a patent one, had existed for many years prior to the accident, and the condition was prolonged down to the occurrence of the accident. Under the statute actual notice is required, but a formal notice is not essential. It is enough if the trustee had actual notice of the defect, however gained. Actual knowledge of the defect, it is held, is the equivalent of the required actual notice. (*Erie Township v. Beamer*, 71 Kan. 182, 79 Pac. 1070.)

Under the evidence we hold that the trustee had actual knowledge of the defect more than five days before the occurrence of the accident as well as of its dangerous character.

Notwithstanding this holding our view of the evidence is that the plaintiff is not entitled to recover damages because of his own negligence, which contributed to the accident and the injury. The plaintiff, who was about sixteen years old, drove his automobile towards the intersection in the dark of the early morning, about six a. m. of December 13, 1929, when a dense fog prevailed over that region, and he admits that although the lights on his automobile were in good condition he could not see where he was traveling on account of the fog and darkness, and that he could not even see a

stone arch bridge at the intersection. He testified in reference to the situation at the intersection:

"Q. You knew it was a bad place?  A. Yes, sir.

"Q. And you could see down the road how far?  A. Well, I couldn't see very far.

"Q. Did you see the stone arch bridge when you passed over it?  A. No.

"Q. What prevented you from seeing it?  A. The fog I guess.

"Q. Was the fog so thick that you couldn't see the bridge?  A. The fog was so thick you couldn't hardly see anything very far ahead of you, and the lights didn't help you very much.

"Q. How far from the center of the intersection were you, Mr. Mowrer, when you started to make the turn to go west?  A. That I couldn't answer, for I don't know.

"Q. As a matter of fact, you didn't know on what part of the road you were at the time, did you?  A. No, I didn't know.

"Q. And you couldn't say now, could you?  A. No, I couldn't say.

"Q. You couldn't tell where you were. You couldn't see the culvert?  A. No, I couldn't tell where I was at, no.

"Q. You couldn't even see the road, could you?  A. Not so good, no.

"Q. You couldn't see the road at all, could you?  A. Oh yes, I could see— I could see the weeds.

"Q. Did you see the intersection?  A. The intersection?

"Q. Yes, the intersection where the two roads meet?  A. I don't remember.

"Q. You don't remember?  A. No, sir; I don't remember seeing it.

"Q. Well, just when, with reference to the center of the intersection, did you start to make the turn in your automobile to go west?  A. Well, I was just going along there, and I thought I was making it all right.

"Q. You thought you were at the place where you should turn?  A. Yes, sir.

"Q. But you could not see, could you?  A. Not so good, no.

"Q. Well, could you see or not?  When you say 'not so good,' what do you mean?  That you couldn't see at all?  A. I couldn't see.

"Q. You could not see?  A. On account of the fog.

"Q. And you knew it was a bad crossing there?  A. Yes, sir.

"Q. And you could not tell whether you were on the traveled roadway or not?  A. I thought I was on the traveled roadway.

"Q. You thought you were, but you couldn't tell, could you? A. I couldn't tell on account of the fog."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Could you see down to the right?  A. What do you mean?  Down the road to the right?

"Q. Yes.  A. No, sir.

"Q. Could you see down the road to the left?  A. No, sir.

"Q. Did you know there was a road to the right and left there? A. I sure did.

"Q. Could you see it that morning?  A. The road?

"Q. Yes.  A. No, not on account of fog.

"Q. And you didn't see it, did you? A. What?

"Q. You didn't see either the road running east or west when you attempted to make the turn there that morning, did you? A. No."

"Q. And you were perfectly familiar with this road, were you not? A. Yes, sir.

"Q. And you knew it was a bad turn? A. Yes, sir.

"Q. Now why didn't you stop and see where you were before you attempted to make this turn? A. Just because I thought I was on the right road."

"Q. You just turned the steering wheel, and then it happened? A. I was trying to turn the corner; yes, sir.

"Q. But you didn't see any corner there? A. I thought I seen it.

"Q. But you didn't, did you? A. Evidently not."

"Q. And you didn't see the intersection of the roads, did you? A. No.

"Q. And you didn't see the corner, did you? A. No, I didn't see the corner."

His testimony was that there was a schoolhouse at one of the corners of the intersection where he had attended, that he had played around the intersection and knew that it was a bad place, and even knew of the washout or ditch, and yet he turned to the west without seeing or knowing even that he had reached the intersection. Knowing of the perils of the place, he blindly drove on without ascertaining whether he was headed for the ditch or the middle of the road. When he found that his lights did not penetrate the fog or enable him to see the junction of the two highways, or the corner at which he was to turn west, it devolved on plaintiff to take precautions for his own safety. If he had stopped his automobile and on foot had gone forward he could have ascertained where he was and the proper and safe place to turn into the intersecting road. When he found he could not see the road from his seat in the automobile, ordinary prudence required him to use other available means to discover the intersection and the safe part of the highway. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, and cases there cited.) His reckless driving into a place where he could not see when he was well informed of the pitfalls and dangers at and about the intersection is, upon his own showing, a glaring case of contributory negligence. It was about the same as if he had undertaken to make the turn in broad daylight with his eyes closed, on a wager that he could make it safely without exercising his sense of sight. While contributory negligence is a matter of defense and the burden of proof is upon the defendant, yet when plaintiff's admissions and evidence show contributory negligence clearly and beyond question, it be-

comes a question of law for the court and bars a recovery just as effectively as though the evidence on the question had been introduced by the defendant. (*Lilly v. Wichita Railroad & Light Co.,* 127 Kan. 527, 274 Pac. 205.)

No error was committed by the trial court in sustaining the defendant's demurrer to plaintiff's evidence on the ground that the plaintiff was guilty of contributory negligence which barred a recovery of damages from the defendant.

The judgment is affirmed.