No. 96,868

Bradley C. Deal, *Appellant*, v. Alan W. Bowman, *Appellee*.

(188 P.3d 941)

Opinion filed August 1, 2008.

*Michael C. Helbert*, of Law Offices of Helbert & Allemang, of Emporia, argued the cause and was on the brief for appellant.

*Craig Kennedy*, of Johnson, Kennedy, Dahl & Willis, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a personal injury action arising from a collision at a controlled intersection. Trial evidence indicated that the defendant stopped at the stop sign and looked both directions before entering the intersection but nevertheless collided with the plaintiff's car, which he did not see due to glare from the sun. In the district court, the jury found no fault/negligence by either party for the accident. The Court of Appeals reversed, concluding that defendant was negligent as a matter of law. *Deal v. Bowman*, No. 96,868, unpublished opinion filed September 21, 2007. We granted the defendant's petition for review, reverse the Court of Appeals, and affirm the district court.

UNDERLYING FACTS AND JURY TRIAL

On September 17, 2002, Bradley Deal was traveling eastbound on Main Street in Council Grove at approximately 5:50 p.m. Alan Bowman, who was traveling south on Adams Street, approached the intersection of Main and Adams. The traffic traveling on Main Street was not required to stop at this intersection, but vehicles on Adams Street had stop signs. After stopping and looking both directions, Bowman pulled into the intersection, where he collided with Deal's vehicle, injuring Deal.

Deal filed a negligence action against Bowman. Both parties agreed that Deal bore no fault for the accident. The questions to be determined at trial were whether Bowman was at fault and, if so, what damages should be awarded.

Because Deal had no recollection of the accident due to his injuries, Bowman provided the only testimony as to how the accident happened. Bowman testified that he came to a complete stop at the stop sign and looked both directions. He then pulled into the intersection and collided with Deal's vehicle, injuring Deal.

Bowman testified that he did not see Deal's car because the sun hindered his vision when he looked west. On direct examination, the following exchange took place between Bowman and his attorney:

"Q. And what—tell the jury what happened when you looked to the west?
"A. When I looked to the west, I did not see any vehicles at all. There was a pretty good glare from the sun that day, but I did not see any vehicles.
"Q. Officer Furman wrote that vehicle two, which was you, stopped at the stop sign and looked to the west, and he did not see vehicle one, the plaintiff, due to the sun blinding him, so he pulled out. Is that what you told the officer?
"A. Yes.
"Q. Is that what you're telling us today?
"A. Yes.
"Q. When you pulled out, you were aware that it was your obligation to look, to be careful?
"A. Yes.
"Q. And were you trying to do that?
"A. Yes."

Deal's counsel conducted the following discussion with Bowman during cross-examination:

"Q. Well, you said that your vision was blocked to the west. At what point in time was it blocked to the west?
"A. I wouldn't necessarily say it was blocked, but I would say it was hindered by the sun.
"Q. Okay. And you knew it was hindered?
"A. Yes.
"Q. And you pulled out anyway?
"A. I very cautiously looked, then pulled out."

Police Officer Tom Furman, who arrived at the scene of the accident shortly after it occurred and filed the police report on the incident, also testified. According to Furman, Bowman told the officer immediately after the accident occurred that "he stopped at the stop sign and he looked, and due to the sun blinding him . . . he did not see the vehicle coming." Furman also testified that when he looked "to the west" after Bowman had provided his explanation, the officer noticed that "the sun was very blinding that day."

At the close of evidence, Deal moved for a directed verdict—*i.e.*, for judgment as a matter of law, on the issue of Bowman's

negligence/liability. The district court denied his motion, concluding that there was evidence that Bowman had stopped and had carefully looked both directions and that the only reason he did not see Deal was due to the sun. The case was given to the jury, which found that neither party was at fault for the accident.

Deal moved for a new trial on the issue of negligence/liability, arguing that the evidence conclusively indicated that Bowman had been negligent. The court denied the motion, relying primarily on *Diaz v. Duke*, 206 Kan. 650, 652, 482 P.2d 48 (1971), where this court reversed a directed verdict on the issue of liability in a negligence action when "it could have found that on account of being suddenly blinded by the sun, [the driver] did not negligently operate his automobile."

COURT OF APPEALS DECISION

Deal appealed the district court's denial of both his motions. A divided panel of the Court of Appeals reversed in an unpublished opinion. *Deal*, slip op. at 11. Although the majority recognized that determinations of negligence are normally left to the trier of fact, the court held that Bowman's actions in this case constituted negligence *as a matter of law*. Slip op. at 10-11. The court therefore held that the district court erred when it denied Deal's motion for judgment as a matter of law, reversed the district court, and remanded the case for a determination of Deal's damages. Slip op. at 11.

The majority reasoned that "Kansas courts have long recognized the general rule that a motorist must correlate his ability to stop his vehicle within the distance objects can be seen ahead." Slip op. at 6. Recognizing the "blinding light rule" in *Diaz*, the majority explained that there is a distinction in Kansas case law between facts that involve a "sudden, unexpected, or surprising" change in conditions and situations as in the present case that involve "a *constant* condition which diminishes a motorist's ability to see." Slip op. at 7, 10. The majority found that otherwise-negligent acts are not excused where conditions are constant. Slip op. at 10.

Because "reasonable minds could not differ as to the conclusion that the sunlight which impaired Bowman's vision was not a sud-

den, unexpected, or surprising condition . . . [or] that Bowman drove into the intersection knowing . . . that his vision was impaired by the sun," the majority held that Bowman was negligent as a matter of law. Slip op. at 10-11.

Judge Elliott dissented, stating he could not "join the majority without substituting [his] judgment for that of the trial judge." Slip op. at 12 (Elliott, J., dissenting). Judge Elliott noted that the district court determined that Bowman's testimony that the blinding sunlight prevented him from seeing Deal's vehicle was sufficient to create a question of fact for the jury. Because Judge Elliott could not "fault" the district court's ruling, he explained that he would affirm the judgment in favor of Bowman. Slip op. at 12 (Elliott, J., dissenting).

Bowman filed a petition for review, claiming that the Court of Appeals opinion applied the incorrect legal standard, as the law requires drivers to exercise ordinary care, not to be "perfect." Bowman argued that the Court of Appeals majority substituted its opinion for that of the trial court and jury, both of which found that there was evidence in the record demonstrating that Bowman acted reasonably under the circumstances. Deal filed a response, claiming that the Court of Appeals majority correctly found that the blinding light rule "was never intended to provide the basis for a motorist to use the sun as a legal excuse to blindly continue driving or to enter into an intersection, road, or highway without knowing what was in his path."

DISCUSSION

The question before us is whether Bowman's action of pulling into the intersection, after stopping, while aware that his vision was hindered by the glare from the western sun constitutes negligence as a matter of law. This question is resolved by considering whether there were facts in the record from which a jury could determine that Bowman exercised ordinary care when entering the intersection. For reasons set forth in this opinion, this court, like the district court, concludes that Bowman's testimony raised a factual question concerning the reasonableness of his actions and thus agrees with

the decision to submit the question of negligence/liability to the jury.

*Standard of Review*

When considering a motion for a directed verdict, now a motion for judgment as a matter of law under K.S.A. 60-250, the district court must " 'resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied.' " *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 202, 4 P.3d 1149 (2000) (quoting *Calver v. Hinson*, 267 Kan. 369, Syl. ¶ 1, 982 P.2d 970 [1999]). Where no evidence is presented on a particular issue or the evidence presented is undisputed and is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions, the matter becomes a question of law for the court's determination. See K.S.A. 60-250; *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 (1983). Appellate courts apply a similar analysis when reviewing the grant or denial of such a motion. See *Wilkinson*, 269 Kan. at 202.

*Analysis*

In a personal injury action based upon negligence, the plaintiff must prove "the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *Nero v. Kansas State University*, 253 Kan. 567, Syl. ¶ 1, 861 P.2d 768 (1993). The general rule is that "[w]hether a duty exists is a question of law," while the question as to "[w]hether the duty has been breached is a question of fact." 253 Kan. 567, Syl. ¶ 1.

Negligence is defined as "the lack of ordinary care" or, more specifically, "the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing [citation omitted]." *Johnston, Administratrix v. Ecord*, 196 Kan. 521, 528, 412 P.2d 990 (1966).

To prevail, a plaintiff must demonstrate that the defendant's lack of ordinary care caused the plaintiff's injuries:

"The right of an injured party to recover does not turn alone upon the fact that he has been injured; but such injury must have been the direct and proximate result of some act or acts of negligence on the part of the one from whom recovery is sought. In other words, *the negligent act or acts* of the party against whom recovery is sought must have been the proximate cause of the injury and damage." (Emphasis added.) *Hickert v. Wright*, 182 Kan. 100, 107-08, 319 P.2d 152 (1957).

In the vast majority of cases, the question of negligence is a factual determination for the jury, not a legal question for the court. As this court explained over 40 years ago in *Johnston*, 196 Kan. at 528:

"The policy of the law has relegated the determination of this [reasonably careful person standard] to the jury, to note the special circumstances of each particular case and then say whether the conduct is such as would be expected of a reasonably careful person under a similar state of affairs. *Only when the facts are such that reasonable men must draw the same conclusion from them does the question of negligence become one of law for the court.*" (Emphasis added.)

There is no dispute that Bowman's action of driving into the intersection proximately caused Deal's injuries. Moreover, it is established that Deal was not at fault. The only question we must resolve is whether there was evidence in the record raising a factual question as to Bowman's negligence—or, more specifically, whether reasonable minds could differ as to whether Bowman breached a duty of care when he pulled his vehicle into the intersection at the time of the accident.

In cases involving allegations of driver negligence, Kansas employs a "reasonably prudent driver" standard to determine whether a driver acted negligently in operating a vehicle. See *Drennan v. Penn. Casualty Co.*, 162 Kan. 286, 288, 176 P.2d 522 (1947). Under this standard, courts have explained that it is the driver's duty "to drive his car as a prudent driver would do." 162 Kan. at 288. Thus, if a "vigilant driver, proceeding at a moderate rate of speed, should be reasonably sure he might safely go forward without stopping, he would not necessarily be negligent in doing so." *Anderson v. Thompson*, 137 Kan. 754, 755-56, 22 P.2d 438 (1933). In such cases, the question of negligence ultimately resolves itself into one

of reasonable care under all the circumstances—a question to be resolved by the trier of fact. 137 Kan. at 756.

Bowman testified at trial that he came to a complete stop at the stop sign at the intersection of Adams and Main, looked both directions, and—perceiving that the intersection was clear—entered the intersection. Bowman explained that there was "a pretty good glare from the sun" when he looked west, but he "did not see any vehicles." Bowman further testified that he was "aware that it was [his] obligation to look [for other vehicles in the intersection], to be careful," and that he was "trying to do that."

The district court held that the evidence established a question of fact as to whether Bowman acted negligently, relying primarily on this court's decision in *Diaz*, 206 Kan. 650. Deal argues—and the Court of Appeals majority agreed—that it was inherently unreasonable to enter into the intersection when the sun prevented Bowman from seeing whether there were any approaching cars, so Bowman was guilty of negligence as a matter of law.

In *Diaz*, the plaintiff was driving west on a street in Junction City late on a summer afternoon when she came to a stop in order to turn left into a parking lot. The defendant, who was traveling in the same direction, rear-ended Diaz' vehicle, causing her injury. At trial, the defendant explained that "the sun suddenly flashed into his eyes, reflecting off the hood of his freshly washed and waxed automobile and blinded him so that he did not see the plaintiff's car." 206 Kan. at 651.

The district court granted the plaintiff's motion for a directed verdict on the issue of the defendant's negligence/liability, finding that the defendant was negligent as a matter of law. This court reversed, finding that "if the jury believed the defendant's testimony, it could have found that on account of being suddenly blinded by the sun, he did not negligently operate his automobile." 206 Kan. at 652.

In its explanation, the court explained that its conclusion was consistent with the " 'blinding light' rule," which states that

"ordinarily a motorist must correlate his ability to stop his vehicle within the distance objects can be seen ahead; but the rule is subject to qualification and exception where there is a sudden change in the motorist's situation not caused

by his own failure or neglect, and that where he is suddenly blinded so that he has no opportunity to stop his vehicle or slacken his speed, he would not be guilty of negligence as a matter of law if he collides with something on the highway. [Citations omitted.]" 206 Kan. at 652.

Turning to the facts of the case before it, the *Diaz* court held that the case should be remanded for a new trial, explaining:

"Had the question of the defendant's negligence been presented to the jury, it may or may not have accepted his testimony as to the blinding effect of the sun's reflection. Be that as it may, we are of the opinion the evidence presented a situation where reasonable minds might reach different conclusions as to whether the defendant was negligent, and if so, whether his negligence was the proximate cause of the injuries complained of. The question was clearly one to be presented to a jury, and not determined by the court as a matter of law." 206 Kan. at 653.

In this case, the district court relied on *Diaz* not for its blinding light rule but rather for its holding that where a factual question exists as to whether a party acts negligently, then the case should be submitted to the jury. The district court did state there was testimony that would allow a jury to conclude that "the blinding light in his eyes negated his fault" but recognized there were factual differences that distinguished *Diaz'* blinding light rule from the instant case.

The Court of Appeals majority disagreed that there was a factual question as to negligence/liability and discussed at length why the blinding light rule in *Diaz* should not apply to the present facts. *Deal*, slip op. at 6-10. The majority found that the holding in *Diaz* was premised on the fact that the "blinding light" was a sudden occurrence of which the defendant had no prior knowledge. See *Deal*, slip op. at 6-7. The Court of Appeals distinguished the situation in *Diaz* from cases where a person continues to drive in constant conditions that knowingly block or impair the driver's vision. In cases involving the latter situation, the driver is liable for negligence as a matter of law. *Deal*, slip op. at 7-9; see *Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P.2d 508 (1947); *Goodman v. Wisby*, 152 Kan. 341, 103 P.2d 804 (1940); *Mowrer v. Osage Township*, 135 Kan. 278, 10 P.2d 906 (1932). We briefly examine these decisions.

*Henderson* was a wrongful death action brought by parents when their son was killed when the automobile he was a passenger in collided with a trailer left parked on the highway at night. This court summarized its rule requiring the exercise of prudence when driving in known and constant conditions, stating:

"The court has on numerous occasions carefully distinguished between deliberate and voluntary driving in rain, mist, fog, dust, smoke or into blinding lights, after the driver *knew he could not see*, and those situations where the driver's vision was suddenly impaired or destroyed or where he was suddenly confronted with an object which, in the exercise of reasonable diligence, could not reasonably have been anticipated. [Citations omitted.]" (Emphasis added.) 164 Kan. at 116.

The court in *Henderson* ultimately found that the question as to whether the plaintiff passenger was contributorily negligent by riding in a vehicle being driven at night at a reckless speed was a question of fact for the jury to decide and thus rejected the defendants' contention that the plaintiff was negligent as a matter of law. 164 Kan. at 115-17.

Although this court in *Henderson* did not find the plaintiff liable for contributory negligence, it reached a different conclusion in *Mowrer* and *Goodman*. In *Mowrer*, the driver of a vehicle sued the township for personal injuries from an accident that was allegedly caused by a highway defect. The district court granted the township's demurrer, finding that the plaintiff driver had failed to state an action for defective maintenance and that the plaintiff had been contributorily negligent. On appeal, this court affirmed, holding that although the driver had successfully stated a defective highway case against the township, he was barred from recovering damages because his actions were negligent as a matter of law. 135 Kan. at 280-83. The court found that the "plaintiff's admissions and evidence show contributory negligence clearly and beyond question," making the issue "a question of law for the court" to determine. 135 Kan. at 282-83.

To arrive at this conclusion, the court noted that when the driver's headlights "did not penetrate the fog *or enable him to see the junction of the two highways*" in front of him, it was the driver's obligation "to take precautions for his own safety." (Emphasis added.) 135 Kan. at 282. Likewise, when he could not see the road

in front of him, "ordinary prudence required him to use other available means to discover the intersection and the safe part of the highway. [Citations omitted.]" 135 Kan. at 282. The reviewing court likened the driver's actions to a scenario where a driver "had undertaken to make the turn in broad daylight with his eyes closed, on a wager that he could make it safely without exercising his sense of sight." 135 Kan. at 282.

This court came to a similar conclusion in *Goodman*, where the defendant's vehicle was engulfed in gravel dust when passed by another vehicle. The defendant driver admitted being unable to see in front of him but continued down the highway and collided with the plaintiff. Considering the plaintiff's appeal, this court held that the defendant was liable for negligence as a matter of law. The court explained that it is generally "negligence as a matter of law for a motorist to operate his automobile on a highway at such speed that it cannot be stopped within the distance objects can be seen ahead of it. [Citations omitted.]" 152 Kan. at 344. This court rejected the defendant's attempts to draw an analogy to the blinding light cases, explaining:

"The difficulty with defendant's contention is that his vision was not suddenly obscured by anything. . . . *Notwithstanding the fact defendant could not see what was ahead of him, he continued* 322 feet further and at a speed of between thirty and forty miles per hour. At that speed he was *proceeding blindly. His vision was not suddenly obscured. He knowingly drove blindly* at that speed *and knowingly exposed himself to the dangers* which might lie before him." (Emphasis added.) 152 Kan. at 345.

Examining the evidence, the court held that because the defendant "knowingly had been traveling in a cloud of dust which . . . so completely obscured his vision that, in view of the speed of his car, he was unable to stop within the range of his vision," he was "guilty of contributory negligence as a matter of law." 152 Kan. at 344-45.

After examining these cases, the Court of Appeals majority correctly determined that, under Kansas law, when a constant condition exists that knowingly blocks or impairs a driver's vision, the decision to continue driving without exercising reasonable diligence is negligence as a matter of law. See *Deal*, slip op. at 7-9. The so-called blinding light rule from *Diaz*, however, provides an

exception in cases where a driver's vision is *suddenly* blocked by some action beyond his or her control. Under such circumstances, the driver is not *necessarily* negligent for something that occurs while the driver is *temporarily* blinded. In other words, a sudden occurrence may create a factual question regarding the reasonableness of the driver's behavior in reacting to the temporary condition.

The Court of Appeals' conclusion that Bowman's actions constituted negligence as a matter of law in this case, however, is not supported by the above analysis. Although Bowman did testify on direct examination that he told the police officer after the accident that his vision had been "blinded" by the sun, preventing him from seeing Deal's vehicle, a review of the entire record reveals that this is not a case where the driver was completely blinded and nevertheless continued driving. Bowman stopped at the intersection, looked both directions, and indicated that he "did not see any vehicles at all." It is true, as the Court of Appeals noted, that Bowman, after stopping, then proceeded into the intersection even though there was "a pretty good glare from the sun that day." On cross-examination, however, he explained that his vision was not "necessarily . . . blocked, but . . . it was hindered by the sun." The district court concluded that this testimony was sufficient to create a question of fact to submit to the jury.

The district court in this case relied on *Diaz* not for its blinding light rule but for its conclusion that a factual question regarding negligence must be submitted to the jury. We must therefore consider whether the underlying facts in this case "are such that reasonable men must draw the same conclusion from them." *Johnston*, 196 Kan. at 528. If reasonable minds could differ on the conclusion as to whether Bowman acted negligently by driving into the intersection, we must affirm the district court's denial of the motion for judgment as a mater of law on the issue of negligence/liability. See *Diaz*, 206 Kan. 650, Syl. ¶ 1.

The most recent case where we held a driver's actions to be negligent as a matter of law appears to be *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043 (1989). In that case, this court affirmed a district court's directed verdict against the defendant on the issue

of liability for negligence. *St. Clair* involved an automobile collision at an intersection where the defendant ran a stop sign and hit the plaintiff, who had the right of way. This court reasoned that "[a]lthough normally a determination of whether someone failed to keep a proper lookout would involve a question of fact to be decided by the jury, the evidence presented here is undisputed that the cause of this accident was [the defendant's] failure to stop at the posted stop sign." 245 Kan. at 420.

*St. Clair* is distinguishable from the current case in that the issue there was not whether the defendant had breached a duty of reasonable care, as the question is here, but whether the defendant's running of the stop sign was the proximate cause of the accident. See 245 Kan. at 420. Running a stop sign clearly violates K.S.A. 8-1528(b). Although the violation of a traffic ordinance is not always an indication of negligence as a matter of law, this court has held that such a violation is almost always negligence when it is the proximate cause of an injury. See *Williams v. Esaw*, 214 Kan. 658, 660-61, 522 P.2d 950 (1974).

In this case, Bowman's undisputed testimony was that he stopped at the stop sign at the intersection and carefully looked both directions. Although the western sun was causing quite a bit of glare from that direction, he perceived that the intersection was clear and began to proceed through the intersection at a speed of about 5 miles per hour. His vehicle then collided with the vehicle driven by Deal. Resolving all inferences in the light most favorable to Bowman, as this court must do in reviewing a motion for judgment as a matter of law under K.S.A. 60-250, see *Wilkinson*, 269 Kan. at 202, Bowman—unlike the defendant in *St. Clair*—did not violate a traffic law. The question was whether he behaved as a reasonably prudent driver would under similar circumstances. See *Drennan*, 162 Kan. at 288.

The facts in the instant case are more akin to this court's earlier decision in *Drennan*. In that case, the plaintiff was driving at night when he was confronted with the high-beam headlights from an oncoming vehicle. Although the plaintiff dimmed his headlights and slowed down, he continued driving. After the car passed, the plaintiff turned on his bright headlights and saw a truck stopped

in the roadway a short distance ahead. The plaintiff attempted to stop, but his vehicle collided with the truck, causing him injury. The plaintiff brought suit against the owner of the truck.

Considering these facts on an appeal from a jury award for the plaintiff, this court rejected the defendant's argument that the district court should have ruled that the plaintiff had been contributorily negligent as a matter of law. 162 Kan. at 291. The court explained its conclusion as follows:

"Must we say as a matter of law that a reasonably prudent driver would assume, under the situation disclosed by the evidence, that the approaching lights would not be dimmed before the cars passed each other? Or that he should be required to assume that there might be a truck standing in the highway without lights and with no flares having been placed to warn approaching cars? We do not think so. We are not here saying that appellee was not guilty of contributory negligence. We are only saying that under the circumstances disclosed, it was a question for the jury to decide whether he was driving his car as an ordinarily prudent driver would do." 162 Kan. at 288.

The *Drennan* court also rejected the defendant's contention that the plaintiff was contributorily negligent as a matter of law since he continued driving when his vision was blinded by the oncoming headlights, stating:

"There is no occasion to review the many cases cited by [the defendant] in which fog, dust, smoke, snow or rain have completely obliterated all or practically all view of the highway ahead of a driver. The question must be viewed realistically. Every driver of an automobile who has done night-driving knows that he frequently meets cars which fail entirely to dim their lights[, and] many of them fail to do so until they are very close. Ordinarily the view ahead is only interrupted for a short period of time by the bright lights of the approaching cars." 162 Kan. at 288-89.

Quoting the court's previous decision in *Anderson*, the court held in *Drennan* that if a careful driver could be " 'reasonably sure' " that he or she might proceed, the driver " 'would not necessarily be negligent in doing so.' " 162 Kan. at 289 (quoting *Anderson*, 137 Kan. at 755). In such cases, " 'the question ultimately resolves itself into one of reasonable care under all the circumstances.' " 162 Kan. at 289 (quoting *Anderson*, 137 Kan. at 755); see also *Towell v. Staley*, 161 Kan. 127, 133-38, 166 P.2d 699 (1946) (noting that the extent that a driver's vision is impaired and the reasona-

bleness of the driver's actions are questions to be resolved by the jury); *Meneley v. Montgomery*, 145 Kan. 109, 112-13, 64 P.2d 550 (1937) ("Whether the driver of the coupe, in this case, was able to observe the cattle truck in her lane of traffic in time to prevent the collision, with the proper exercise of care under all the circumstances, could not be answered as a matter of law, but was a proper question for the jury.").

We have explained that "[r]ules of law relative to the driving of motor vehicles should be practical." *Towell*, 161 Kan. at 133. The questions to be resolved in this case are, practically speaking, whether Bowman's decision, after stopping, to proceed into the intersection in spite of the western sun's glare was objectively reasonable and whether his testimony was credible. Both of these determinations should be made by the trier of fact. See *Sall v. T's, Inc.*, 281 Kan. 1355, Syl. ¶ ¶ 2-5, 136 P.3d 471 (2006) (question of whether a person exercises reasonable care is a question of fact); *State v. Torres*, 280 Kan. 309, 334, 121 P.3d 429 (2005) (credibility of evidence is a matter strictly within the province of the jury). The jury was given the opportunity to consider these questions and found that Bowman's conduct was not negligent.

There is a reason that this court has made the policy determination that questions of negligence must be left to the jury unless reasonable minds could not differ on the outcome. See *Diaz v. Duke*, 206 Kan. 650, Syl. ¶ 1, 482 P.2d 48 (1971). As we explained in *Krentz v. Haney*, 187 Kan. 428, 431-32, 357 P.2d 793 (1960):

"Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged had been established. Before the court should make such a holding the evidence should be so clear that reasonable minds considering it could have but one opinion; namely, that the party was negligent. [Citation omitted.]

. . . .

"The law favors trial by jury and the right should be carefully guarded against infringements. It is a right cherished by all free people. A trial court, in the exercise of its prerogative in determining questions of law only in these kinds of cases, should not usurp the power and function of the jury in weighing evidence and passing upon questions of fact."

In this case, the district court correctly determined that the issue of whether Bowman acted reasonably by proceeding into the in-

tersection—that is, whether he was negligent—was a question of fact to be determined by the jury in light of all of the surrounding circumstances.

Because we conclude that the district court correctly denied Deal's motion for a judgment as a matter of law, we similarly conclude that Deal's claims relating to the denial of his motion for a new trial—which was based on the same contention that Bowman's conduct was negligent as a matter of law—are without merit.

We affirm the district court's denial of Deal's motion for a judgment as a matter of law and the subsequent judgment in favor of Bowman. The decision by the Court of Appeals reversing the district court is reversed.