NOT DESIGNATED FOR PUBLICATION

No. 120,950

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KOLTON KINCAID,
*Appellant,*

v.

KUBOTA TRACTOR CORPORATION,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 5, 2020.
Reversed and remanded with directions.

*Jesse Tanksley* and *Michael J. Wyatt*, of Mann, Wyatt & Rice, LLC, of Hutchinson, for appellant.

*Thomas R. Larson* and *Daniel R. Luppino*, of Lewis Rice LLC, of Overland Park, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM: This negligence action is brought by Kolton Kincaid against Kubota Tractor Corporation for failure to adequately warn of the dangers associated with use of a Kubota skid steer. While Kincaid was riding on the front of the skid steer, the grapple attachment was raised and Kincaid's shoulder was caught in a "pinch point" between the skid steer's roof overhang and the arms of the grapple attachment. Kincaid was severely injured and seeks to recover for his injuries. Kincaid claims Kubota had a duty to warn him of the danger of being crushed at the pinch point because it is a latent danger, not obvious or apparent to a user of the skid steer. Had he been adequately warned of the

1

danger, Kincaid would not have ridden on the front of the skid steer and would not have been injured.

Kubota moved for summary judgment, arguing it did not have a duty to warn Kincaid under K.S.A. 60-3301 et seq., the Kansas Product Liability Act (KPLA), specifically K.S.A. 60-3305(a). Kubota also contended that the combination of warnings on the front of the skid steer, along with those inside the cab and in the operator's manual, provided adequate warning to Kincaid of the danger of riding on the skid steer. The district court granted summary judgment in favor of Kubota but did so on different factual and legal grounds than those advanced by Kubota in its motion.

Because we find genuine issues of material fact exist, we reverse the district court's order for summary judgment and remand the matter for further proceedings.

FACTS

In 2013, Eric Harbaugh bought a new Kubota Skid Steer and leased it to his company, HVJ Services, LLC, which provided various services to farmers. Kincaid and two high school classmates, Riley Waggoner and Jacob Kentzler, worked part-time for HVJ. In November 2013, all three employees were using the skid steer to get to a worksite across a large, muddy field. Kentzler was driving, and Kincaid and Waggoner were both riding on the outside front of the skid steer, with Kincaid seated on the center step on the front of the skid steer, between the grapple attachment and the cab of the skid steer. As the skid steer approached a ravine with standing water, Kentzler raised the loader arms and the grapple attachment. As the grapple attachment raised, Kincaid's shoulder was caught under the cab's roof overhang. Kincaid's spine was compressed at the "pinch point" created by the roof overhang and the rising attachment, and he suffered a severe spinal cord injury and became a paraplegic.

2

Although still in high school at the time of the accident, Kincaid had operated skid steers at least five times a week for five to six years. He regularly rode on the front end of skid steers as did others. He had ridden on the same spot on a skid steer where he was on the day of the accident with his dad and with other employers on prior occasions. Riding on the skid steer "was just a place to hop on and ride if you didn't want to walk, you know, a mile back to the truck or wherever you were going." The day before the accident, Harbaugh, his employer, observed Kincaid riding on the front of the skid steer and did not object or tell him it was dangerous.

At his first deposition about a year after the accident, Kincaid said riding on a skid steer "wasn't in any means safe." At his second deposition about three years later, he said both he and his dad believed riding on the skid steer was safe. Later, he explained he knew doing anything outside of the cab was generally dangerous, but he thought it was reasonable to ride on it because it is a fairly common practice. He also would not have thought he could have been injured in the way he was because the pinch point was not obvious to him.

Kincaid said he did not read the manual for the Kubota skid steer before riding on it. He had glanced at the warnings on the skid steer. He saw a warning sticker which he believed warned against standing in the bucket because of a fall risk. He did not recall seeing a warning about carrying passengers on the skid steer, but he was sure there was one. Even if he had seen a warning stating "never carry riders," people did not obey that warning "because of the functionality" of riding on machinery, and he would have ridden anyway. Kincaid said he knew the skid steer presented many dangers and not all of them could be marked. But he said the biggest dangers, like pinch points, usually are marked.

On the outside of the skid steer near where Kincaid had been sitting, a yellow warning label depicted a figure standing in a bucket attachment while the loader arms were raised. There was a circle and diagonal slash over the figure. The warning also

3

depicted another figure falling to the ground. Kincaid interpreted the sticker as warning of the risk of falling if someone were to stand on the loader.

On the inside of the cab, another warning label stated:

"WARNING

"TO AVOID INJURY:

"● Read and understand Operator's Manual before operating this machine.

. . . .

"● Keep by-standers away when operating.

. . . .

"● Never carry riders."

The Operator's Manual also contained these warnings and instructions:

"1. **BEFORE OPERATION**

"1. Know your equipment and its limitations. Read and understand this entire manual before attempting to start and operate the machine.

"2. Obey the danger, warning and caution labels on the machine.

. . . .

"11. Do not allow anyone to use the machine until they have been informed of the work to be performed and they have read and understood the operator's manual.

. . . .

"13. Do not allow passengers to ride on any part of the machine at any time.

. . . .

"**STARTING**

"**WARNING**

"To avoid personal injury or death:

. . . .

"● Before you start the engine and before you move the machine, make sure that no one is underneath, or on, or close to the machine."

Dr. Lila Laux, a human factors expert retained by Kincaid, conducted an analysis of the warnings on the Kubota skid steer. Based on her review of the case, Dr. Laux determined the existing warnings on the skid steer did not warn against riding on the location where Kincaid sat and the risk of being crushed was a foreseeable but latent hazard that an ordinary user would not appreciate unless warned about it. She explained the skid steer's user population included young people who would not receive a lot of training, so any important information needed to be provided where they would interact with the skid steer. Many of these young people would believe they could safely ride on the skid steer because they had done it before. As a result, a general warning not to ride on the skid steer would not be enough. An adequate warning should include not only the appropriate precaution to be observed but also should describe the particular danger which could result if the precaution is ignored.

Dr. Laux provided a prototype pictograph warning sticker about a crush hazard. It shows a person sitting on the skid steer approximately where Kincaid had been sitting when he was injured. The warning states: "You can be crushed if arms/attachments are raised. Do not sit or ride on any part of the machine at any time." Dr. Laux stated there was adequate room to place the warning on the skid steer near the fall risk warning, and she thought adding caution striping to the edge of the roof overhang would provide a visual warning of the hazard. Kincaid testified if he had seen a warning like Dr. Laux's prototype, he would not have ridden on the skid steer.

*District Court's Summary Judgment Ruling*

In ruling in favor of Kubota, the district court stated, "The only issue is whether the manufacturer was required to put an additional warning on the Skid Steer specifically addressing the danger of the pinch point. There is no dispute a warning sticker was in place outside the machine indicating one was not to be on attachments." The district court found no further warnings, beyond those already provided by Kubota, were required to

5

warn of the pinch point hazard. In other words, it deemed the warnings Kubota provided were adequate.

The district court found Kincaid was injured, not because he rode on the skid steer, but, rather, because Kentzler, who was the intended user of the skid steer, raised the grapple attachment with Kincaid on board. "[T]he tragic and unfortunate accident did not occur because [Kincaid] caught a ride on the attachment, it happened because he was on the attachment when the operator lifted the attachment." The district court did not find Kubota was excused from warning about the danger of the pinch point by the KPLA as Kubota contended but, instead, implicitly found the warnings Kubota provided—to the operator, Kentzler—were an adequate warning of the danger. It found, "Any reasonable person would believe the operator's warning against people being near the equipment when being operated was not to prevent people falling off the machine, but to prevent people from being caught in moving machinery or between the machine and other objects, which is unfortunately what occurred in this instance." The district court also noted the "Skid Steer was never to provide a means of transportation to anyone other than the operator. [Kincaid] used the Skid Steer as a means of transportation in a manner not intended and warned against." The district court made no finding about the level of Kincaid's actual knowledge of the pinch point danger but found "[a] reasonable person would have been aware of the risk of riding on the attachment and certainly if the attachment is being raised."

Kincaid timely appeals.

ANALYSIS

On appeal, Kincaid argues the district court erred in granting summary judgment because Kansas law imposes a duty on manufacturers to warn about specific dangers inherent in the product's use or misuse if those dangers are not obvious. As a result, he

6

contends Kubota had a duty to warn about the pinch point and genuine issues of material fact exist as to whether Kubota fulfilled this duty. He also adds Kansas is a comparative fault state, so Kentzler's failure to follow the warnings in the cab does not relieve Kubota of liability.

In defending the district court ruling, Kubota argues it only had a duty to warn the operator, Kentzler, because he was the intended user of the skid steer. Kubota further contends that its warnings to the operator were adequate as a matter of law and that Kentzler's failure to abide by the warnings were the cause of Kincaid's injuries. We note this argument was not made in Kubota's motion for summary judgment, and none of Kubota's statements of uncontroverted fact address Kentzler's knowledge or awareness of any of the Kubota warnings.

Alternatively, Kubota argues, as it did in the district court, that under K.S.A. 60-3305(a), it had no duty to warn Kincaid because he knew that riding on the skid steer was dangerous—even if he was not aware of the specific danger of the pinch point—and he knew or should have known he was not supposed to ride on the skid steer.

*Standard of Review*

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

7

must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

When ruling on a summary judgment motion, the district court views the evidence in the light most favorable to the party opposing the motion. In reviewing the summary judgment ruling on appeal, we apply the same standard. See *Fawcett v. Oil Producers, Inc. of Kansas*, 302 Kan. 350, 358-59, 352 P.3d 1032 (2015). Summary judgment in a negligence action "is generally proper if the only questions presented are questions of law." *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013).

> "Summary judgment should be granted with caution in negligence actions. In the vast majority of cases, claims based on negligence present factual determinations for the jury, not legal questions for the court. Summary judgment is proper in a negligence action, however, if the only questions presented are questions of law. If reasonable persons could arrive at only one conclusion, the court may decide the question as a matter of law." *Hauptman v. WMC, Inc.*, 43 Kan. App. 2d 276, Syl. ¶ 1, 224 P.3d 1175 (2010).

Stated another way, when "reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment should be denied." *Bacon v. Mercy Hospital of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988).

*Duty to Warn*

In describing the general rule for a manufacturer's duty to warn, the Kansas Supreme Court references the Restatement (Second) of Torts § 388 (1963):

> "'One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.'" *Long v. Deere & Co.*, 238 Kan. 766, 772-73, 715 P.2d 1023 (1986).

Thus, under the general duty to warn, Kubota had a duty to exercise reasonable care to inform those whom it should expect to use their product of the facts which make it likely to be dangerous. Additionally, "merely because a product is misused does not render a particular danger open and obvious" because a manufacturer has a duty to warn when a product's misuse is foreseeable. *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1104 (10th Cir. 1991).

However, under this general rule, a manufacturer has no duty to warn about an open and obvious danger. "'If a danger is obvious, then its obviousness constitutes a warning.'" *Miller v. Lee Apparel Co., Inc.*, 19 Kan. App. 2d 1015, 1030, 881 P.2d 576 (1994). Like open and obvious dangers, a manufacturer does not have a duty to warn about a danger the user actually knows about. See *Long*, 238 Kan. at 773.

The KPLA contains additional or expanded exceptions to the duty to warn in three circumstances: "(1) the warnings would relate 'to precautionary conduct that a reasonable user or consumer would take for protection,' (2) the situation is one where a reasonable user or consumer would have taken the precaution, and (3) the warnings would relate to open and obvious hazards that a reasonable user or consumer would appreciate." *Duffee*

*v. Murray Ohio Mfg. Co.*, 879 F. Supp. 1078, 1082 (1995) (citing *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 757, 861 P.2d 1299 [1993]).

*Adequacy of Warning Directed to the Operator*

In its ruling, the district court diverged from the argument advanced by Kubota in the motion. It did not find that the KPLA or any particular caselaw or Kincaid's actual knowledge of dangers associated with the skid steer excused Kubota from warning about the danger of being crushed by the machine. Rather, as noted previously, it found that the warning Kubota directed to the operator of the skid steer, Kentzler, was adequate warning of the pinch point danger complained of by Kincaid and satisfied Kubota's duty to warn. Under the district court's analysis, if Kentzler had complied with the Kubota warning to never carry riders, Kincaid would not have been injured.

Kubota cites cases from other jurisdictions in support of the district court's ruling and its argument that it should only have a duty to warn the skid steer's operator. For example, in *Lucey v. Saint-Gobain Performance Plastics Corp.*, No. 1:17-CV-1054, 2018 WL 2926289 (N.D.N.Y. 2018) (unpublished opinion), the plaintiff claimed the defendant companies knowingly contaminated the groundwater and air in a village in New York from a chemical compound manufactured by the defendant companies over the course of several years but failed to warn residents of the health risks. The *Lucey* court held that under New York law, "a duty to warn with respect to bystanders simply requires the manufacturer to warn the purchasers or users of the product so that the purchasers or users operate the product in a manner that reduces the bystander's exposure to a foreseeable risk of harm." *Lucey*, 2018 WL 2926289, at *6. Similarly, Kubota argues it satisfied its duty to warn by warning the operator, who is the intended user of the skid steer, against carrying riders.

We find *Lucey* factually and legally unpersuasive. In addition to the specific line of cases involving "bystanders" in New York law—which we do not find in Kansas law—it would be difficult to classify Kincaid as a mere bystander. He was working a job as part of a crew which utilized the skid steer specifically. Everyone working the job was interacting in some way with it. Although he was not operating the skid steer at the moment of his injury, and even though the skid steer was not intended to be used as a means of transportation, Kincaid was *using* it as a means of transportation. So, even if *Lucey* were the law in Kansas, it would remain at least a question of fact whether Kincaid was a user or a mere bystander.

Next, relying on the learned intermediary doctrine from prescription drug warning cases, Kubota suggests we apply a similar rule to the operator of equipment. Under the learned intermediary doctrine, the drug manufacturer satisfies the warning requirement by adequately warning the physician who administers the medication, the rationale being that prescription drugs are only available through a physician and it is the physician's duty to be informed about the medication. See, e.g., *Humes v. Clinton*, 246 Kan. 590, 600, 792 P.2d 1032 (1990). Though it concedes the learned intermediary doctrine does not apply here, Kubota contends it demonstrates that Kansas "recognizes that there are situations where the most effective warning is directed at someone other than the injured party" and the "manufacturer fulfills its duty to warn by providing an adequate warning to that person." Kubota contends we should uphold the district court ruling that its duty to warn was satisfied by giving notice to the operator of its equipment by applying the rationale of the learned intermediary doctrine. But neither the Restatement nor any Kansas case allows a manufacturer of equipment to give a warning only to the *intended* user of its product. We therefore decline to extend the rationale of the learned intermediary doctrine to operators of equipment. While notice directed to the operator, rather than other users, may bear on the issue of reasonableness of the warning provided, it does not satisfy, as a matter of law, Kubota's duty to warn.

11

The manufacturer's duty to warn under the Restatement and the KPLA extends to reasonably foreseeable users, and misusers, of a manufacturer's product. Under the facts of this case as construed in the light most favorable to Kincaid, it was foreseeable, and common, for others, in addition to the "operator" of the skid steer, to use it as a means of transportation. Kubota had a duty to warn Kincaid, as well as Kentzler, of the latent dangers of the skid steer. We find the district court erred in finding, as a matter of law, that Kubota satisfied its duty to warn by providing an adequate warning to the operator Kentzler.

An adequate warning is one that is reasonable under the circumstances. *Wooderson v. Ortho Pharmaceutical*, 235 Kan. 387, Syl. ¶ 9, 681 P.2d 1038 (1984). Whether a manufacturer breached its duty to provide an adequate warning is normally a question of fact. *Sell v. Bertsch and Co., Inc.*, 577 F. Supp. 1393, 1399 (D. Kan. 1984). Here, the district court found that "[a]ny reasonable person" would believe that Kubota's warnings were to prevent an accident such as the one that occurred here. But Dr. Laux expressed a reasoned opinion why and how the Kubota warning against carrying riders was not adequate in the case of a latent hazard. She believed an adequate warning should describe the particular danger because without it, a reasonable user would not know or appreciate the need to take precaution. We make no judgment whether Dr. Laux is correct, but her testimony is at odds with the district court's conclusion about the adequacy of the warning. Based on her testimony, reasonable minds could differ on whether the warnings to Kentzler were adequate, and we find summary judgment is not appropriate.

*Causation is a Question of Fact*

Additionally, in granting summary judgment, the district court focused on the operator's failure to follow the cab's warnings as the cause of Kincaid's injuries. Causation is normally a question of fact for a jury. *Estate of Belden v. Brown County*, 46

12

Kan. App. 2d 247, Syl. ¶ 13, 261 P.3d 943 (2011); *Garay v. Missouri Pacific R. Co.*, 38 F. Supp. 2d 892, 899 (D. Kan. 1999). As Kincaid points out, Kansas is a comparative fault state. Under K.S.A. 2019 Supp. 60-258a, a jury may compare the fault of any party whose negligence caused or contributed to an accident. Kincaid acknowledges a jury may allocate fault to Kentzler, but this would not preclude the jury from allocating fault to another party, including Kubota. And "under the Kansas foreseeable misuse doctrine, negligent use of a product which is foreseeable does not preclude a manufacturer from liability." *Wheeler*, 935 F.2d at 1105.

Kincaid presented evidence that carrying riders on the skid steer was a common misuse, and a reasonable inference could be drawn that Kubota could foresee an operator of the skid steer would fail to follow the warnings and instructions. While a jury may determine that Kentzler bears a significant portion of fault for the accident, his fault does not excuse Kubota for any fault that may be attributed to it for failing to specifically warn users of the pinch point danger. Here, we believe reasonable people could draw more than one conclusion when apportioning fault under the facts. As a result, we find a genuine issue of material fact remains on the issue of causation and the district court erred by determining that Kentzler was the sole cause of Kincaid's injuries.

*Summary Judgment Is Not Warranted Under Kubota's Alternate Theory*

Kubota alternatively argues that even if the trial court's reason for granting summary judgment was not correct, we may still affirm summary judgment because the record supports an alternative basis for reaching the same result. See *Robbins v. City of Wichita*, 285 Kan. 455, 472, 172 P.3d 1187 (2007) ("When the district court reaches the correct result, its decision will be upheld even though the district court relied on the wrong ground or assigned erroneous reasons for its decision."). As it did before the district court, Kubota contends K.S.A. 60-3305(a) applies to the facts of this case and

excuses it from any duty to warn. Before addressing that statute, a brief summary of the legal basis of Kincaid's claim is helpful.

Kincaid directs our attention to PIK Civ. 4th 128.05, which summarizes and instructs a jury on a manufacturer's duty to warn. Consistent with Restatement (Second) § 388, the PIK instruction provides:

> "A *(manufacturer)(seller)* of a product which *(he)(she)(it)* knows, or by the exercise of ordinary care should know, is potentially dangerous to users thereof, has a duty to give adequate warnings of such danger where injury to a user thereof can be reasonably anticipated if an adequate warning is not given. The duty to warn includes a duty to provide a warning to dangers inherent in use and the duty to provide adequate instructions for safe use. Failure to so warn constitutes negligence."

Kincaid argues Kubota knew or should have known the skid steer's pinch point was potentially dangerous to users and therefore had a duty to give an adequate warning of the danger. Even though Kincaid does not dispute that riding on the skid steer is a misuse—it is not designed as a means of transportation for anyone but the operator—manufacturers "have a duty to warn of dangers of harmful effects arising from the foreseeable use and misuse of a product" that are known or readily foreseeable. See *Richter v. Limax Int'l, Inc*., 45 F.3d 1464, 1471 (10th Cir. 1995). Under the evidence viewed in the light most favorable to Kincaid, users commonly ride on a skid steer as a means of transportation, and a reasonable inference could be drawn that riding on the skid steer was a foreseeable misuse that exposed users to the danger of being crushed at the pinch point. An adequate warning of the danger is necessary because, according to Dr. Laux, "a reasonable user of the skid steer exercising reasonable care, caution, and procedure would not know or appreciate the need to take precautions, safeguards, or other actions to avoid the danger of being crushed between the grapple arm or attachments and the overhang."

Kubota does not contend the pinch point is not a danger, nor does it contend Kincaid knew or should have known of that specific danger, or that the danger is open and obvious. Rather, Kubota's view is that Kincaid knew of a precaution that would have prevented his injury—not riding on the skid steer. Kubota contends it "did not owe Kincaid a duty to warn him against doing something that he knew was dangerous and contrary to the warning and instructions that he expected" were on the skid steer. Kubota claims K.S.A 60-3305(a) eliminates the duty of a manufacturer to warn against precautions or safeguards of which a user is already aware and argues the uncontroverted facts establish Kincaid knew that riding on the skid steer while it was in operation was not safe. Kubota contends that even though Kincaid did not recall the specifics of the warnings that were actually on the skid steer, he knew and expected there was a warning not to ride it.

Before we address the specific requirements of K.S.A. 60-3305(a), we pause to note that because Kubota expressly bases its motion on Kincaid knowing that riding on the skid steer was not safe, the motion must fail. At the summary judgment stage, we construe the facts and draw conclusions from those facts in favor of Kincaid. See *Patterson*, 307 Kan. at 621. Kubota relies on Kincaid's testimony to establish that he knew riding on the skid steer was not safe, but Kincaid's testimony, construed most favorably to him, shows he believed it was safe. While it is not disputed that at one point in his first deposition, Kincaid stated riding on the skid steer "wasn't in any means safe," he also testified in a later deposition that he believed riding on the skid steer was safe and reasonable. So, a factual conclusion that Kincaid knew riding on the skid steer was not safe is not warranted because his testimony can be interpreted in more than one way. At trial, he can explain any discrepancy in his testimony, and the jury can evaluate the context of the seemingly contradictory statements, make a credibility determination, and resolve the issue.

Kincaid's acknowledgment that doing anything on a skid steer was generally dangerous or dangerous in different ways does not compel a conclusion that he knew it was not safe to ride on a skid steer; again, he testified he believed it was safe. And Kincaid's level of awareness of the warnings on the skid steer also does not compel a conclusion he knew it was unsafe to ride. The parties agree the Kubota warnings do not specifically warn against a crush hazard; they also agree the in-cab warnings and the operator's manual expressly advise against allowing a person to ride on the skid steer. But Kincaid testified he was not familiar with the in-cab warnings, had not read the operator's manual, and did not understand the exterior warning sticker to be a general prohibition against riding on the skid steer. The warning sticker shows a person standing up in a bucket attachment with a depiction of the person falling and hitting his or her head on the ground. Unlike the in-cab and operator's manual warnings, the exterior sticker does not include any specific admonition against riding on the equipment. Although Kubota contends the sticker is a warning against riding on the skid steer, Kincaid and Dr. Laux view it at most as a warning against standing on a skid steer attachment. In fact, Dr. Laux opined that if Kincaid had been standing on the skid steer or attachment and was injured by falling, she would have no complaint about the adequacy of the warning. Reasonable minds could differ about the level of Kincaid's awareness of the safety of riding on the skid steer. Thus, it is a question of fact.

Kubota is correct that it has long been the rule in Kansas that there is no duty to warn against a danger when the user already knows of the danger. See, e.g., *Long*, 238 Kan. at 773; *Brand v. Mazda Motor Corp.*, 978 F. Supp. 1382, 1389 (D. Kan. 1997). To be clear, however, Kubota does not contend Kincaid actually knew the specific danger of the pinch point. Kubota argues, however, that "actual knowledge of the danger" rule was clarified or expanded by K.S.A. 60-3305(a) to eliminate a manufacturer's duty to warn of a danger when a user knows of a *precaution* that, if followed, would avoid the danger.

K.S.A. 60-3305(a) states:

"In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances."

We also note PIK Civ. 4th 128.05 provides for additional instruction *to the jury* which incorporates the substance of K.S.A. 60-3305(a) when it is asserted as limiting a manufacturer's duty to warn:

"You are further instructed that any duty to warn against a danger or hazard does not extend:

"A. To warnings, protecting against or instructing with regard to those safeguards, precautions, and actions which a reasonable user or consumer of the product, with the training, experience, education, and with any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances."

In reviewing the language of the statute, our Supreme Court has aptly observed that "K.S.A. 60-3305 is not a model of clarity" and the language used in the statute "has caused confusion among courts and legal commentators alike." *Delaney v. Deere & Co.*, 268 Kan. 769, 775-76, 999 P.2d 930 (2000) (interpreting K.S.A. 60-3305[c]). There is no question the statute applies here as this case is a product liability claim involving the duty of a manufacturer to warn against a danger.

17

The balance of the language of K.S.A. 60-3305(a) is somewhat less clear. However, the language of the statute plainly involves a series of factual, not legal, considerations. In determining whether the duty to warn is excused, the statutory focus is what a reasonable user should do under all the circumstances.

While Kubota is correct that K.S.A. 60-3305(a) places limits on a manufacturer's duty to warn, to apply the limitations, one must make factual determinations about what a reasonable user could and should do under all the circumstances. Considerations of what actions a reasonable user could and should have taken under all the facts and circumstances, along with determining the "training, experience, education and any special knowledge" the user "did, should or was required to" possess, are purely factual assessments. Additionally, the facts and circumstances to be considered here include a latent danger not recognized by ordinary users who commonly ride on skid steers and believe it is safe to do so.

The inquiry under K.S.A. 60-3305(a) is not far removed from a simple negligence determination. Negligence includes doing something that a reasonable person would not do under all the circumstances. See PIK Civ. 4th 103.01. "In the vast majority of cases, the question of negligence is a factual determination for the jury, not a legal question for the court." *Deal v. Bowman*, 286 Kan. 853, 859, 188 P.3d 941 (2008). Here, that factual inquiry is, under all the circumstances, including those circumstances specifically listed in K.S.A. 60-3305(a), would a reasonable user ride on the skid steer? Because reasonable minds could draw different conclusions based on the evidence, we find summary judgment based on K.S.A. 60-3305(a) is not appropriate. We therefore reverse and remand for further proceedings.

Reversed and remanded with directions.

18